STATE Of Utah, Plaintiff and Appellee,

v.

Michael Duane SEEL and Glenn Lemon, Defendants and Appellants.

No. 910549–CA.

Court of Appeals of Utah.

Feb. 25, 1992.

Keith H. Chiara, Price, for defendants and appellants.

R. Paul Van Dam, State Atty. Gen., and Charlene Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Defendants Michael Duane Seel (Seel) and Glenn A. Lemon (Lemon) appeal from convictions of four counts of aggravated burglary and four counts of theft. Seel also appeals from a conviction of possession of a firearm by a restricted person. We affirm.

## BACKGROUND

Defendants were stopped at 4:27 a.m. on June 2, 1989, with stolen merchandise in their orange and white Scout International. Seel was driving and Lemon sat in the front passenger seat. In the back of the vehicle was new merchandise, still wrapped in the original plastic, with the price stickers attached, from four Ferron, Utah businesses that had been burglarized earlier that morning. Within both defendants'

easy reach, in the center of the back seat, not covered by the merchandise, was an attache case containing a loaded .357 Magnum pistol and boxes of ammunition.

Deputy J.D. Mangum, who stopped defendants, acted in response to a radio call from the officers who had investigated the burglaries immediately after hearing the sensor alarm. They reported to him that one of the officers had seen an orange and white Scout International with Colorado license plates speeding south, away from the burglarized businesses, shortly after the alarm had sounded. This officer had seen no other vehicles in the area. The other officer soon arrived at the site where Deputy Mangum had stopped the Scout. He gave Deputy Mangum further information about the burglaries. Based upon Deputy Mangum's observation of the merchandise in the back of the Scout and upon the information the other officers had supplied him, Deputy Mangum arrested defendants at the site where he had stopped them.

As defendants were booked into jail, Seel gave consent for the officers to search the Scout. He also warned that they would find a gun in the vehicle and explained that defendants had found the merchandise along the side of the road between Ferron and Emery. Shortly thereafter, pictures of the vehicle were taken. Then, in addition to the consent Seel had given to a search, officers obtained a search warrant before searching the vehicle. Their search revealed the merchandise, the pistol, and various tools, including pry bars, chisels, pliers, and a lock pick.

Defendants were charged with four counts of aggravated burglary, possession of a firearm by a restricted person, possession of burglary tools, four counts of theft, and habitual criminality. The habitual criminality charges were abandoned before trial.[1]

Defendants were initially represented by retained counsel, who later moved to withdraw. At the hearing on that motion, the court appointed a public defender to represent defendants. Both attorneys assured the court that no continuance of the trial, which was scheduled in less than a month, was necessary. However, three days before trial, defendants' court-appointed attorney moved for a continuance, stating that defendants had just informed him of a potential alibi claim and that he had insufficient time to give notice of the claim or to prepare the defense before trial. No continuance was granted.

At the originally scheduled time, the case was tried to a jury. At the conclusion of the State's case, the court orally dismissed the possession of a firearm charge because the State had not produced evidence that either of the defendants knew the pistol was in the Scout. The State moved to reopen its case and present evidence of possession of the firearm. The court granted the motion and admitted testimony that Seel knew the gun was in the Scout. Seel then testified in his own behalf that defendants had been in Price with friends at the time of the burglaries, had purchased gas at a certain Huntington Seven–Eleven, and had found the new merchandise in an area the size of a table, at the right side of the road between Castle Dale and Ferron. The Seven–Eleven clerk testified that defendants did not purchase gas in Huntington at the time they claimed. An officer who had patrolled the area during that time testified that no southbound vehicles were on that road at that time, and that he would have noticed the orange and white Scout. After hearing the additional evidence, the court dismissed the possession of a firearm charge as to Lemon, but reinstated the charge as to Seel, based on the testimony that Seel knew the pistol was in the Scout.

At the conclusion of the trial, the jury convicted both defendants of four counts of aggravated burglary, all first degree felonies, in violation of Utah Code Ann. § 76–6–203 (1990) and four counts of differing degrees of theft in violation of Utah Code Ann. § 76–6–404 (1990). They also convict-

---

1. Seel initially claimed that the habitual criminality charges had been read to the jury. However, on remand, the trial court corrected the record to show that the charges had not been read. Defendants have not pursued this issue on appeal.

ed Seel of possession of a firearm by a restricted person, a third degree felony, in violation of Utah Code Ann. § 76–10–503(2) (Supp.1991). This appeal followed.

On appeal, defendants claim that they were denied their right to effective counsel, that the trial court incorrectly construed the possession requirement of the aggravated burglary statute, that the trial court committed plain error by failing to sever the potentially prejudicial charge of possession of a firearm, and that defendants were denied a fair trial by the prosecutor's misconduct in closing argument and by the court's admitting into evidence the tools found in the Scout. Seel also claims that the court's dismissal and subsequent reinstatement of the charge of possession of a firearm violated his right against double jeopardy. We consider each contention in turn.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendants contend that they were denied their right to effective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution and by Article I, Section 12 of the Utah Constitution. Because an after-the-fact analysis of counsel conduct can have a distorting effect, "the burden of establishing inadequate representation is on the defendant 'and proof of such must be a demonstrable reality and not a speculative matter.'" *Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) (quoting *State v. McNicol*, 554 P.2d 203, 204 (Utah 1976)). Proof of inadequate representation has two components, as articulated by the United States Supreme Court and adopted in this state:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

*State v. Montes*, 804 P.2d 543, 545 (Utah App.1991) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)). Because both components are necessary, "'we need not decide whether counsel's performance was defective if we conclude that the trial outcome was not prejudicially affected by the claimed error.'" *Montes*, 804 P.2d at 545 (quoting *State v. Verde*, 770 P.2d 116, 118–19 (Utah 1989)). Defendants claim they were denied effective assistance by counsel's failure to file a motion to sever, failure to exclude witnesses, failure to object to prosecutor's comments, and failure to move for suppression and also by the trial court's error.

### A. Counsel's Failure to File Motion to Sever

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. First, defendants point to counsel's failure to file a motion to sever the charge of possession of a firearm by a restricted person, which requires proof that a defendant has previously been convicted of a felony. Rule 9(d) of the Utah Rules of Criminal Procedure provides in pertinent part, "If it appears that a defendant ... is prejudiced by joinder of offenses ... the court shall order an election of separate trials of separate counts ... or provide such other relief as justice requires." Based on this rule, had counsel made a motion to sever the charges requiring proof of prior crimes, the motion probably would have been granted. Hence, in not making the motion, counsel's performance was deficient. However, defendants must provide a persuasive explanation of how severing the different charges would likely have produced a different outcome. *State v. Hallett*, 796 P.2d 701, 707 (Utah App.1990), *cert. granted*, 815 P.2d 241 (Utah 1991). Defendants' only discussion of this point is

the allegation that "[t]he evidence necessary to prove Count V [possession of a firearm by a restricted person] obviously would have a prejudicial effect on the jury's attitude concerning the defendant[s'] guilt or innocence on the other counts within the Information." This mere allegation is insufficient to undermine confidence in the outcome, considering the overwhelming evidence of guilt on the theft and burglary charges: defendants' Scout was seen leaving the area of the burglaries; defendants were stopped minutes later with the stolen merchandise in their vehicle; their vehicle also contained tools consistent with the pry marks at the burglary scene; their story regarding another possible explanation proved to be incredible. Since the evidence of defendants' guilt was overwhelming, the balance was tipped even without the prior convictions evidence. As in *Hallett*, any failure of counsel regarding severance was not prejudicial. *Id.* at 707.[2]

### B. Counsel's Failure to Seek Timely Exclusion of Witnesses

■■■ Defendants also fail to show prejudice in their claim that counsel neglected to seek timely exclusion of witnesses. In a case involving violation of a witness exclusion order, the Utah Supreme Court stated:

> [T]he onus of showing wherein he has been prejudiced by a ruling of the lower court falls upon the defendant. Defendant in the instant case merely alleges prejudice without pointing to inconsistencies in the record or other evidence which would show wherein he has been prejudiced.

*State v. Carlson*, 635 P.2d 72, 74 (Utah 1981) (footnote omitted). In another witness exclusion case, the court refused to grant a mistrial for violation because "[t]here was no evidence or suggestion that any witness changed his testimony because of the conversations." *State v. McGrath*, 749 P.2d 631, 634 (Utah 1988). This requirement that defendants demonstrate, rather than merely allege, prejudice when a trial court refuses to declare a mistrial for violation of an exclusion order has even stronger application to a claim of ineffective assistance of counsel, when defendants' only complaint is that counsel did not request the exclusion sooner. In the present case, defendants have not shown that the witnesses changed their testimony because of any conversations witnesses might have had before being excluded from the courtroom. Defendants merely allege that the witnesses could have modified their testimony. Their mere allegation is insufficient to establish prejudice.

### C. Counsel's Failure to Object to Closing Remarks

■■■ Defendants next contend that counsel was derelict in failing to object to the prosecutor's comments in closing argument: that they "could have had a dead officer," that Seel was lying, and that the tools found in defendants' vehicle were burglary tools—tools consistent with the pry marks on the doors and damage to tills and doorknobs at the burglary scene. However, counsel for both sides have considerably more freedom in closing argument and "'a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom.'" *State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988) (quoting *State v. Valdez*, 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973)), *aff'd on reh'g*, 776 P.2d 631 (Utah 1989). Prosecutor comments in a criminal case only warrant reversal if (1) they call juror attention to matters which should not be considered in reaching a verdict; and (2) under the circumstances of the particular case, the jurors were probably influenced by the comments. *State v. Harrison*, 805 P.2d 769, 786 (Utah App.) (citing *Valdez*, 30 Utah 2d 54, 513 P.2d at 426), *cert. denied*, 817 P.2d 327 (Utah 1991). If the comments would not warrant reversal if objected to, failure

---

2. Defendants further argue that in light of counsel's failure to make a motion, the court committed plain error in not severing sua sponte the charge of possession of a firearm by a restricted person. Because counsel failed to raise the issue, defendants must demonstrate that the court's action was plain error: both obvious ("plain") and harmful. *State v. Anderson*, 789 P.2d 27, 29 (Utah 1990). For the same reasons that counsel's failure to request severance was not prejudicial, the court's failure to sever the firearm possession count was not harmful.

to object cannot be considered prejudicial. In the present case, the prosecutor's comments were reasonable inferences from the evidence and did not call juror attention to matters which should not be considered. Thus, we find no prejudice.

### D. Counsel's Failure to File a Motion to Suppress

■ Defendants next claim counsel was ineffective in failing to file a motion to suppress the evidence found in the vehicle as a result of the allegedly illegal stop, arrest, and search. An officer may stop a person upon reasonable suspicion that the person has committed a public offense. *State v. Baird*, 763 P.2d 1214, 1216 (Utah App.1988). The United States Supreme Court has held that representatives from one law enforcement department may stop and investigate a vehicle based on another department's articulable facts supporting a reasonable suspicion that the wanted person has committed an offense. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985); *accord State v. Bruce*, 779 P.2d 646 (Utah 1989). In this case, the officer who dispatched the radio message was cognizant of articulable facts supporting a reasonable suspicion that defendants had committed the burglaries: he had seen defendants' orange and white Scout with Colorado license plates, the only vehicle in the area, speeding away from the burglary scenes immediately after the alarm sounded. Deputy Mangum, seeing the same Scout with Colorado license plates, relied on these articulable facts which the officer had radioed to him, and made a stop which was no more intrusive than the stop the original officer could have made.

■ Deputy Mangum also had probable cause for the arrest. " 'The determination should be made on an objective standard: whether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense.' " *State v. Cole*, 674 P.2d 119, 125 (Utah 1983) (quoting *State v. Hatcher*, 27 Utah 2d 318, 495 P.2d 1259, 1260 (1972)). Deputy Mangum's arrest was based on the transmitted information describing the vehicle, his observation of the merchandise in the car, and his discussion with the officer who had investigated the burglaries.

Additionally, since Seel consented to the vehicle search and officers obtained a search warrant, defendants' argument that the search was warrantless is without factual basis. We decline to consider any other allegations, such as defendants' claim that the officer used a flashlight, for which defendants have provided no record support. *See Montes*, 804 P.2d at 546. Hence, defendants have mentioned no basis for filing a motion to suppress that would support granting that motion.

### E. Trial Court's Denial of Effective Assistance

■ Defendants next claim that actions of the trial court denied them effective assistance of counsel. Defendants' contention that the trial court denied them effective assistance of counsel by allowing original counsel to withdraw is without basis. The record shows that all precautions of Rule 4–604 of the Utah Code of Judicial Administration,[3] governing withdrawal of counsel, were taken. Both attorneys agreed in open court to the substitution; defendants did not object. *See State v. Tillman*, 750 P.2d 546, 551 (Utah 1987) (a contemporaneous objection must be made to preserve a claimed error for appeal).

---

**3.** Subsection (1), which provides for withdrawal of counsel prior to entry of judgment in criminal cases, states:

(A) Consistent with the Rules of Professional Conduct, an attorney may withdraw as counsel of record in criminal cases except where withdrawal may result in a delay of the trial or prejudice to the client. In those cases, an attorney may not withdraw without the approval of the court.

(B) A motion to withdraw as an attorney in a criminal case shall be made in open court with the defendant present unless otherwise ordered by the court.

Utah Code Jud.Admin. R4–604 (1990).

▆▆▆▆ Defendants further claim that the court denied them effective assistance by denying counsel's motion to continue the trial so that they could incorporate alibi testimony. A ruling on a motion to continue is within the discretion of the trial court and we will not reverse absent a clear abuse of that discretion. *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982). We cannot say the trial court abused its discretion. To constitute reversible error, an error complained of "must be sufficiently prejudicial that there is a reasonable likelihood of a more favorable result for the defendant in its absence." *State v. Featherson*, 781 P.2d 424, 431 (Utah 1989) (citations omitted). Since the merchandise was found in defendants' Scout shortly after the burglary, and alibi witnesses could not have testified regarding how the goods got into the car, Seel had to testify to present the story about finding the merchandise by the side of the road. In rebuttal to Seel's testimony, the State provided testimony that defendants had not bought gas as they claimed and had not been seen on the road they claimed to have traveled. Defendants' story proved to be incredible and inconsistent. The jury would have been just as free to disbelieve the testimony of alibi witnesses as they were to disbelieve that of Seel. The State's case was so strong that omission of the alibi witnesses was not sufficient to undermine confidence in the jury's outcome. For the same reasons, counsel's failure to investigate alibi witnesses was not prejudicial, as defendants claim. We conclude that defendants were not denied effective assistance of counsel either under standards applicable to counsel or under those applicable to the court.

## II. POSSESSION OF A DANGEROUS WEAPON

▆▆▆▆ Defendants contend that the presence of the pistol in the attache case on the back seat of the Scout was not sufficient possession of a dangerous weapon to impose liability for aggravated burglary. The threshold question is whether this argument was preserved for appeal. " 'A general rule of appellate review in criminal cases in Utah is that a contemporaneous objection or some form of *specific* preservation of claims of error must be made a part of the trial court record before an appellate court will review such claim on appeal.' " *State v. Johnson*, 774 P.2d 1141, 1144 (Utah 1989) (emphasis in original) (quoting *State v. Tillman*, 750 P.2d 546, 551 (Utah 1987)). We believe that defendants' assertion at trial that the evidence did not "establish[ ] possession within the intent of the statute" was specific enough to preserve this argument for appeal.

▆▆▆▆ "When examining a trial court's interpretation of a statutory provision we apply a correction of error standard.... [A] penal statute shall be construed 'according to the fair import of [its] terms to promote justice.' " *State v. Swapp*, 808 P.2d 115, 120 (Utah App.) (quoting Utah Code Ann. § 76-1-106 (1990)), *cert. denied*, 815 P.2d 241 (Utah 1991). Aggravated burglary is a first degree felony when

in attempting, committing, or *fleeing from a burglary* the actor or another participant in the crime:

(a) causes bodily injury to any person who is not a participant in the crime;

(b) uses or threatens the immediate use of a dangerous weapon against any person who is not a participant in the crime; or

(c) *possesses* or attempts to use any explosive or dangerous weapon.

Utah Code Ann. § 76-6-203 (1990) (emphasis added). Defendants cite *State ex rel. J.L.S.*, 610 P.2d 1294 (Utah 1980), arguing that the term "possesses" must be of equal gravity to "uses or threatens" or "attempts to use" a dangerous weapon. However, *State ex rel. J.L.S.*, which construed an ambiguous statute to survive a void for vagueness challenge, is inapposite, since "possesses" is not an ambiguous term in this statute. "Possess" is defined by statute: "to have physical possession of or to exercise *dominion or control* over tangible property." Utah Code Ann. § 76-1-601(9) (1990) (emphasis added).

■ The purpose of the aggravated burglary statute is to promote the safety of peace officers and citizens by discouraging violent behavior in the commission of an otherwise nonviolent crime. If defendants exercised "dominion or control" over the weapon to the extent that injury to a person "not a participant in the crime" could reasonably have resulted, this is sufficient to satisfy the statutory definition of possession. Specifically, in the present case the question becomes whether the weapon could reasonably have been used against officers while defendants were fleeing. There is no evidence that defendants carried the pistol with them as they burglarized the businesses. However, they were stopped while fleeing from the burglaries, and the loaded pistol was within easy reach in the center of the seat behind both defendants. The merchandise was stacked around the case, to facilitate ready access to the pistol. Seel knew the pistol was there. In short, the weapon was close enough at hand for defendants to use readily against an officer while they were fleeing. These facts satisfy the requirements of the statute.

■ Lemon also argues that the aggravated burglary charges against him should have been dismissed because there was no evidence that he knew the pistol was there. Although the accomplice statute used by the trial court requires knowledge, we affirm the trial court's ruling, based simply on the wording of the aggravated burglary statute, which imposes criminal liability if "*another participant* in the crime ... possesses ... any explosive or dangerous weapon." Utah Code Ann. § 76–6–203(1) (1990) (emphasis added). Application of accomplice liability to this statute is unnecessary. Lemon was properly charged with aggravated burglary based on the fact that another participant in the crime, Seel, was knowingly in possession of a dangerous weapon.

4. Seel makes this claim under the Fifth Amendment of the U.S. Constitution and under Article

## III. DOUBLE JEOPARDY

■ Seel additionally contends that his right against double jeopardy [4] was violated when the court granted a motion to reopen the evidence after dismissing the possession of a firearm charge. This issue was not raised in the proceedings below. Consequently, absent unusual circumstances, e.g., *State v. Curry,* 814 P.2d 1150 (Utah App.1991), defendants must show that the court committed plain error in allowing the State to reopen its case. *State v. Eldredge,* 773 P.2d 29, 35 (Utah), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989); *State v. Archambeau,* 820 P.2d 920, 924–25 (Utah App.1991). The Utah Supreme Court has quoted the Washington State Supreme Court for the proposition that " '[e]ither a journal entry or more likely and preferably a formal order would have been necessary to [constitute a final determination of a] matter.' " *State v. Dyer,* 671 P.2d 142, 146 (Utah 1983) (citing *State v. McClelland,* 24 Wash.App. 689, 604 P.2d 969, 971 (1979) (quoting *State v. Aleshire,* 89 Wash.2d 67, 568 P.2d 799 (1977))); *see also State v. Gregorious,* 81 Utah 33, 16 P.2d 893, 895 (1932) (trial court has discretion to permit a case to be reopened). This is especially true when, as in the present case, defendants were still present and the proceeding did not adjourn. *McClelland,* 604 P.2d at 971. Based on this precedent, the trial court's decision to allow the State to reopen the evidence was not plain error.

## IV. OTHER CLAIMS

■ Defendants also argue that the prosecutor's misconduct in his closing remarks deprived defendants of a fair trial. However, defendants' failure to object to the prosecutor's comments or to ask for a curative jury instruction at trial waived defendants' right to appeal this issue. *State v. Humphrey,* 793 P.2d 918, 925 (Utah App.1990). Finally, defendants argue that the court erred in admitting into evidence the tools found in the vehicle. We

I, Section 12, of the Utah Constitution.

have considered this claim and found it without merit. *State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

On all issues, we affirm the trial court's order convicting defendants.

BILLINGS and RUSSON, JJ., concur.