STATE of Utah, Plaintiff and Appellee,

v.

James B. CASE, Defendant and Appellant.

No. 930725–CA.

Court of Appeals of Utah.

Nov. 2, 1994.

Deborah Kreeck Mendez (Argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for appellant.

T. Langdon Fisher, Simarjit S. Gill (Argued), Associate City Prosecutor, Salt Lake City, for appellee.

Before ORME, Associate P.J., BENCH, DAVIS, JJ.

## OPINION

ORME, Associate Presiding Judge:

Defendant James Case pled guilty to driving while under the influence of alcohol, a violation of Utah Code Ann. § 41–6–44 (Supp.1994), but retained his right to appeal the trial court's denial of his motion to suppress evidence obtained during an investigative stop. *See State v. Sery*, 758 P.2d 935, 939 (Utah App.1988). Defendant claims on appeal that the investigating officer, acting on a radio dispatch, lacked reasonable suspicion to stop defendant's car and that any evidence obtained in the course of the stop was illegal. We agree and reverse.

## FACTS

Around two o'clock in the morning of June 26, 1992, Officer Lefavor of the University of Utah Police Department received a dispatch call while on motorcycle patrol, directing him to the 100 Court area of University Village to investigate a possible car prowl or car burglary. The dispatcher described the suspect as male with a chunky build, possibly Hispanic, wearing a white tee shirt. Upon arriving at the 100 Court area, Officer Lefavor observed an automobile with two occupants leaving the area; he noticed that the passenger appeared to fit the dispatched description. The officer stopped the vehicle on Sunnyside Avenue and, after questioning the occupants, determined that they were in the area on legitimate business, i.e., dropping a friend off at her University Village residence. The driver was defendant James Case and the passenger was Richard Farnsworth.

Officer Bradford also responded to the car prowl dispatch and was present at the scene, questioning an individual on foot, when Officer Lefavor stopped defendant's vehicle. Officer Bradford subsequently joined Officer Lefavor in questioning Case and Farnsworth and, like Lefavor, testified that she believed Farnsworth matched the description she received from dispatch.

During the course of his conversation with defendant, Officer Lefavor detected an odor of alcohol coming from inside the car. He subsequently arrested defendant for driving while under the influence of alcohol.

Defendant raises the following issues on appeal: (1) whether the police lacked reasonable suspicion to initiate an investigatory vehicle stop, (2) whether the dispatch description was overly broad and thus was insufficient to justify the stop, and (3) whether Case or Farnsworth sufficiently matched the dispatch description to justify the stop. In view of our disposition, we need only reach the first issue raised by defendant.

## STANDARD OF REVIEW

In reviewing a trial court's determination that reasonable suspicion justified a Fourth Amendment search or seizure, we apply two different standards of review—one to the trial court's factual findings and the other to its legal conclusions. The trial court's factual findings underlying its decision to grant or deny a motion to suppress evidence are examined for clear error. *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994). On the other hand, the standard to be applied to the conclusion of law, i.e., whether the facts as found give rise to reasonable suspicion, "is reviewable nondeferentially for correctness, as opposed to being a fact determination reviewable for clear error." *Pena*, 869 P.2d at 939. Nevertheless, the nature of this particular determination of law allows the trial court "a measure of discretion ... when applying that standard to a given set of facts." [1] *Id.*

## INVESTIGATORY AUTOMOBILE STOPS

### A. Generally

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). *Accord State v. Strickling*, 844 P.2d 979, 982 (Utah App.1992). *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968) (defining Fourth Amendment seizure as "whenever a police officer accosts an individual and restrains his freedom to walk away"). A limited crime investigation stop, as defined by *Terry v. Ohio* and its progeny, must meet a two-prong test to overcome the Fourth Amendment's prohibition against unreasonable seizures. First, the officer's initial stop must be justified; second, subsequent actions must be within the scope of the circumstances justifying the stop.[2] *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. *Accord Provo City Corp. v. Spotts*, 861 P.2d 437, 439 (Utah App.1993). In the instant case, our concern focuses only on the first prong of the *Terry* test: whether there was reasonable suspicion to justify stopping defendant's automobile.

A stop is justified if there is a reasonable suspicion that the defendant is involved in criminal activity. Utah Code Ann. § 77–7-15 (1990). *See also State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam) (stating police must base reasonable suspicion on objective facts indicating defendant's criminal activity). While the required level of suspicion is lower than the standard required for probable cause to arrest, the same totality of facts and circumstances approach is used to determine if there are sufficient "specific and articulable facts" to support reasonable suspicion. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. *See United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). *Accord State v. Bello*, 871 P.2d 584, 587 (Utah App.1994); *Strickling*, 844 P.2d at 983.

In addition, the State bears the initial burden for establishing the articulable factual basis for the reasonable suspicion necessary to support an investigative stop. *State v. Delaney*, 869 P.2d 4, 7 (Utah App.1994).

### B. Police Bulletins and Radio Dispatches

The specific and articulable facts required to support reasonable suspicion are most frequently based on an investigating

---

1. Reasonable suspicion determinations turn on unique and variable fact patterns, making it impractical to review every case de novo to determine if the facts are sufficient as a matter of law. *State v. Pena*, 869 P.2d 932, 940 (Utah 1994). However, any latitude given the trial court is limited to unique fact patterns beyond recurring situations already determined by the appellate courts. *Id.* "[S]ufficiently careful [appellate] review is necessary to assure that the purposes of the reasonable-suspicion requirement are served." *Id.* at 939.

2. The requirements for a *Terry* investigatory stop are codified in Utah Code Ann. § 77–7–15 (1990), which authorizes law enforcement personnel to "stop any person in a public place when [the officer] has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions."

officer's own observations and inferences, *see Terry v. Ohio*, 392 U.S. 1, 22–23, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968), but under certain circumstances the officer may rely on other sources of information. An investigative stop *may* survive the Fourth Amendment prohibition of unreasonable searches and seizures if performed by an officer who objectively relies on information, bulletins, or flyers received from other law enforcement sources. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). *Accord State v. Bruce*, 779 P.2d 646, 650 (Utah 1989); *State v. Seel*, 827 P.2d 954, 960 (Utah App.), *cert. denied*, 836 P.2d 1383 (Utah 1992).

The *Hensley* decision is a landmark case which added an important clarification to the *Terry* investigatory stop doctrine. In *Hensley*, officers from the Covington, Kentucky, police department stopped the defendant based on a "wanted flyer," received via teletype from the St. Bernard, Ohio, police department, describing the defendant's alleged involvement in an armed robbery. *Hensley*, 469 U.S. at 223, 105 S.Ct. at 677. The Supreme Court first ruled that a *Terry* stop is not limited to investigation of ongoing or future crimes.[3] *Id.* at 228–29, 105 S.Ct. at 680. The Court then held that an investigating officer may rely on a flyer or bulletin from other police departments to justify an investigative stop, but only "if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop." *Id.* at 232, 105 S.Ct. at 682 (emphasis in original).

In allowing such reliance, the Court made a logical progression from its decision fourteen years earlier in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), in which it determined the legality of an arrest based on radioed arrest warrant information. The *Whiteley* Court held that an officer can make a valid arrest based on such broadcast information only if the department issuing the information had sufficient probable cause to support the arrest warrant. *Whiteley*, 401 U.S. at 568, 91 S.Ct. at 1037. By applying the *Whiteley* approach to reasonable suspicion scenarios, the *Hensley* Court concluded that the officer or department who issues a directive for investigation to other police must have sufficient reasonable suspicion, through specific and articulable facts, to support the stop. *Hensley*, 469 U.S. at 232, 105 S.Ct. at 682. Conversely, "[i]f the flyer[4] has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Id.* *See generally* 3 Wayne R. LaFave, *Search and Seizure* § 9.3(f) (2d ed. 1987).

■ Consequently, if the investigating officer cannot provide independent or corroborating information through his or her own observations, the legality of a stop based on information imparted by another will depend on the sufficiency of the articulable facts known to the individual *originating* the information or bulletin subsequently received and acted upon by the investigating officer.[5] *See*

---

**3.** The Court opined that the Fourth Amendment standard of reasonableness may differ if the investigation involves completed crimes as opposed to continuing or imminent criminal activity, suggesting a completed crime may not entail the same exigent circumstances that exist with future or ongoing criminal activity and thus may pose less threat to public safety. *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). Although the Court noted the "strong government interest in solving crimes and bringing offenders to justice," it declined to decide whether a *Terry* stop is permitted to investigate all past crimes, regardless of how serious they may or may not be. *Id.* at 229, 105 S.Ct. at 680. *See* 3 Wayne R. LaFave, *Search and Seizure* § 9.2(c), at 360 (2d ed. 1987).

**4.** The term "flyer," as used in *Hensley*, has been taken to mean any information intended to prompt investigation that is transmitted through

police channels, regardless of method. *See State v. Pena*, 869 P.2d 932, 940 (Utah 1994); 3 Wayne R. LaFave, *Search & Seizure*, § 9.3(f), at 487 (2d ed. 1987). Indeed, the flyer at issue in *Hensley* was not a tangible bulletin in the hands of investigating officers—it was received by teletype and read orally, during shift changes, to officers on duty. *See* 469 U.S. at 223, 105 S.Ct. at 677.

**5.** The Supreme Court in *Hensley* specifically rejected the suggestion that the investigating officer must actually be informed of the facts known to the originating source. *Hensley*, 469 U.S. at 231, 105 S.Ct. at 681–82. Thus, *Hensley* minimizes any intrusion on police methods that would hamper prompt investigation of reported criminal activity. An officer who receives a flyer or radio dispatch may take it at face value and act on it forthwith. However, if the investigation culminates in arrest and the legality of the stop is

*Hensley,* 469 U.S. at 232, 105 S.Ct. at 682; *State v. Seel,* 827 P.2d 954, 960 (Utah App.), *cert. denied,* 836 P.2d 1383 (Utah 1992).

### ANALYSIS

In the instant case, the trial court made the following findings of fact relating to the dispatcher's radioed bulletin:

1. On June 26, 1992, University of Utah Police Officer [Lefavor] was dispatched to a suspected car prowl, or vehicle burglary, in a common parking area at the 100 court of the University Village sometime after midnight.

2. The dispatcher gave Officer [Lefavor] the following description of the suspect: a chunky male, possibly Hispanic, wearing a white t-shirt. These were the only details provided by the dispatcher.

3. The officer did not know who had phoned in the complaint.

In its conclusions of law, the trial court stated, in part, as follows:

2. The officer's stop of the vehicle was based on objective articulable facts such that the officer had a reasonable suspicion that the passenger, Farnsworth, was involved in criminal activity. The passenger's appearance, and proximity to the reported criminal activity, gave rise to that suspicion.

3. The dispatch provided sufficient information on which an officer could base reasonable suspicion to arrest [6] someone matching the dispatch description. Specifically, the dispatch included:

   1) alleged crime a car prowl,

   2) location of the car prowl, and

   3) information regarding the suspect.

The facts found by the court are not clearly erroneous. *See State v. Pena,* 869 P.2d 932, 935–36 (Utah 1994). However, the findings wholly fail to establish the department's reasonable, articulable suspicion to issue the "possible car prowl" bulletin to officers on duty. We are left to speculate as to how the dispatch instruction came to be made: Was a call received from a citizen? If so, what did the citizen say? Did the dispatcher interpret the report? If so, in what manner? Did a supervising officer direct that the investigation be made based on a pattern of similar activity in the area? If so, what were the sources of the supervisor's information? Merely providing descriptive information to an officer about *whom* to stop, by itself, is not enough to justify the stop if there are no articulable facts pointed to which establish *why* a stop was to be made.[7] Thus, the trial court's legal conclusion is not supported by its findings and is incorrect. *See id.* at 939.

Nor is this a case of mere deficiency in the findings that might be cured on remand. *Cf. State v. Lovegren,* 798 P.2d 767, 771 (Utah App.1990) (remanding for more detailed findings where "facts were greatly disputed at the suppression hearing" and trial court's findings were inadequate). The deficiency in the factual findings was inevitable because the State failed to provide any evidence at all regarding the origin of, and basis for, the dispatcher's broadcast. No evidence was presented that could have shed light on the basis for the broadcast: the dispatcher did not testify, no tapes or logs were introduced, and neither investigating officer was able to testify to anything said by the dispatcher relating to the report's origin.[8] While the parties seem to assume the dispatcher received a call from a concerned but

---

challenged, the State becomes obligated, albeit after the fact, to show that legally sufficient articulable suspicion prompted issuance of the flyer or dispatch in the first place.

**6.** After a review of the record, including the court's preliminary findings, we believe the trial court made an unintentional error in stating "reasonable suspicion to arrest"—it meant to say "reasonable suspicion to stop."

**7.** If such a factual foundation were not required, it would be possible to validate bogus information or to secure action based only on police hunches simply by sending information through police channels. Such information-laundering legerdemain is simply not countenanced under the Fourth Amendment.

**8.** Defendant requested dispatch records both in discovery and during the evidentiary hearing that addressed the motion to suppress.

anonymous neighbor,[9] there is no evidence of record to confirm this supposition. The source and content of the information which prompted the broadcast are simply unknown. Furthermore, Officer Lefavor made no independent investigation or observations that would provide a separate basis for reasonable suspicion.[10]

The State contends that Officer Lefavor corroborated dispatch's information by stopping an individual in the area who appeared to match the physical description given. We disagree. This is not corroboration of criminal activity, only of physical characteristics that by themselves have no relevance to criminal activity.[11] *See State v. Steward*, 806 P.2d 213, 216 (Utah App.1991) (no articulable facts to connect defendant with drug activity when he was driving on a public road during time officers conducted drug searches in nearby houses); *Sandy City v. Thorsness*, 778 P.2d 1011, 1012–13 (Utah App.1989) (per curiam) (defendant not lawfully stopped for investigation of driving while intoxicated where observed conduct was consistent with that of normal driver).

█ Finally, we note that our conclusion is fully consistent with a number of cases from other jurisdictions holding, as we do here, that if an investigating officer relies solely on transmitted information from other sources, no legally sufficient reasonable suspicion exists in the absence of a demonstrated factual basis for the issuing department's information. *See, e.g., United States v. Orne-las–Ledesma*, 16 F.3d 714, 718 (7th Cir.1994) (uncorroborated tip by itself does not justify stop, even if tip comes from law enforcement sources); *United States v. Cutchin*, 956 F.2d 1216, 1218 (D.C.Cir.1992) (evidence contained on 911 tapes goes directly to issue of whether dispatch had requisite reasonable suspicion); *Ex parte State*, 494 So.2d 719, 721 (Ala.1986) (radio dispatch describing vehicle involved in drug sale not sufficient to justify stop absent evidence of circumstances giving rise to dispatch); *Kaiser v. State*, 296 Ark. 125, 752 S.W.2d 271, 272–73 (1988) (no evidence in record to support reasonable suspicion for directive, broadcast by Missouri police to Arkansas police, to stop vehicle carrying drugs); *In re Eskiel S.*, 15 Cal.App. 4th 1638, 19 Cal.Rptr.2d 455, 458 (1993) (record devoid of evidence showing officer who originated report had reasonable suspicion); *Village of Gurnee v. Gross*, 174 Ill.App.3d 66, 123 Ill. Dec. 866, 528 N.E.2d 411, 412 (1988) (no evidence presented that related to source or factual basis of reckless driving complaint broadcast to investigating officer); *Commonwealth v. Fraser*, 410 Mass. 541, 573 N.E.2d 979, 982 (1991) (no evidence indicating reasonable suspicion for officer making radio call describing armed person in vehicle); *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. 1992) (en banc) (no evidence in record establishing basis of dispatch concerning armed individual in certain vehicle); *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131, 136–37 (1989) (no evidence in dispatch tape that proved factual foundation for a broad-

---

9. The mere fact that a caller is anonymous does not render the caller's information unreliable. *See State v. Harris*, 671 P.2d 175, 180 (Utah 1983) (assuming veracity of average citizen witness); *State v. Miller*, 740 P.2d 1363, 1366 (Utah App.) (same), *cert. denied*, 765 P.2d 1277 (Utah 1987).

10. Thus, this case is unlike *State v. Johnson*, 253 Kan. 75, 853 P.2d 34 (1993), in which the court allowed a stop based on anonymous information that was substantiated by the investigating officer's personal observations of suspicious activities. Responding to a call reporting a "suspicious cream-colored Ford Thunderbird," the officer observed a car matching this description pulling away from behind a store before business hours, driving slowly with the trunk lid ajar. *Id.* 853 P.2d at 38.

11. The illusory nature of the "corroboration" to which the State points is demonstrated by the following hypothetical. Suppose the dispatcher was acting on a tip by a neighbor informant, who had carefully described the individual as a chunky Hispanic in a white tee shirt. The caller went on to explain that the individual was sitting on the hood of a car, apparently his own, eating a hamburger and fries, "but he's got that look in his eye—like someone who's thinking of breaking into a car." Obviously such a report does not provide a reasonable basis on which to conclude a car prowl or burglary is imminent. Nor can seeing a person who matches the description of the parking lot diner become corroboration for the suspected offense that is so lacking in reasonable and articulable suspicion. Such bootstrapping simply does not work, for the reason that *whom* the police are looking for has nothing to do with *why* the suspect is sought.

cast concerning a "suspicious" vehicle in a certain area); *Garza v. State,* 771 S.W.2d 549, 558–59 (Tex.Crim.App.1989) (en banc) (officer who passed information that defendant was "good for" burglaries in investigating officer's area had no articulable facts to support statement).

Accordingly, in the total absence of any evidence concerning the factual basis for the radioed instruction on which Officer Lefavor acted, the State has failed to meet its burden of establishing facts supporting the reasonable, articulable suspicion necessary to stop defendant's vehicle. In the absence of such facts, the trial court erred in concluding the stop was lawful.

## CONCLUSION

The State failed to establish whatever facts were available to the dispatcher (or to whomever it was that instructed the dispatcher to make the broadcast) to support a reasonable suspicion of criminal activity sufficient to justify an investigative stop. Consequently, the investigating officer's stop of defendant's vehicle, although made in good faith reliance on radioed information, was not lawful. We reverse the trial court's denial of defendant's motion to suppress all evidence flowing from this seizure and remand for such proceedings as may now be appropriate.

DAVIS, J., concurs.

BENCH, J., concurs in the result.