**CITY OF ST. GEORGE, Plaintiff and Appellant,**

v.

**Steven Reese CARTER, Defendant and Appellee.**

No. 960704–CA.

Court of Appeals of Utah.

Sept. 11, 1997.

Gary G. Kuhlmann and Paul E. Dame, St. George, for Plaintiff and Appellant.

Gary W. Pendleton, St. George, for Defendant and Appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

The City of St. George (the City) appeals the trial court's order granting defendant's motion to suppress. We reverse.

## BACKGROUND

Defendant was a drive-through customer at an Arby's restaurant in St. George. Rick Hafen, an Arby's employee, noticed a can of Keystone beer in defendant's lap when he collected defendant's money, and later saw him drink from the can. Based on how far defendant tipped the can when drinking, Hafen estimated that the can was approximately half full. Hafen called and informed police dispatch that a driver with an open container in a small white Dodge pickup with a camper shell had just gone through Arby's drive-through window. Hafen's description included the license plate number as well as the make and model of defendant's vehicle. Hafen also informed dispatch that there was a passenger in the vehicle. Approximately two minutes later, police dispatch called Hafen back to find out where the vehicle went. Hafen maintained visual contact with defendant's vehicle while it exited Arby's and parked on a nearby street. Hafen did not see defendant discard the Keystone beer can before he left Arby's property.

Officer Jason Whipple of the St. George City Police Department was informed by dispatch that an Arby's employee had seen an open container in a vehicle at a drive-through window. Dispatch relayed the description of a white compact vehicle with a camper shell and two occupants. Officer Whipple located defendant's vehicle parked near Arby's. Officer Whipple drove past the vehicle and saw defendant and another occupant eating sandwiches. Officer Whipple then parked behind defendant's vehicle and activated the overhead lights on the patrol car. Upon approaching the vehicle, Officer Whipple informed defendant that his vehicle matched the description of a vehicle reported to have an open container inside. Defendant denied having any open containers of alcohol in the vehicle and denied drinking any alcohol. Officer Whipple did not see any open containers through the window, and a warrants check came back negative.

Officer Whipple testified that he was unable to detect the smell of alcohol because of the odor of food inside the vehicle. Upon returning to the vehicle after the warrants check, Officer Whipple asked defendant to exit the vehicle without his food. His reason for doing so was to try to detect the smell of alcohol without it being masked by the odor of the food. Upon talking with defendant outside his vehicle and away from the food, Officer Whipple detected the smell of alcohol on defendant's breath. He thereupon asked for, and received, defendant's consent to search the vehicle for open containers. The search yielded eight empty beer cans, one partially full beer can under the front seat, a baggie of marijuana, and a marijuana pipe. Officer Whipple then conducted field sobriety tests and placed defendant under arrest.

Defendant was charged with DUI, possession of a controlled substance (marijuana), open container violation, and possession of paraphernalia. Defendant moved to suppress all the evidence, claiming it was obtained by an unreasonable search and seizure. The trial court granted defendant's motion to suppress based on the conclusion that, although Officer Whipple had reasonable suspicion to stop defendant, he exceeded the scope of the stop when he asked defendant to exit the vehicle. The trial court therefore granted defendant's motion to suppress the evidence obtained after defendant exited the vehicle as it was the product of an unreasonable search and seizure. The City appeals.

ISSUES AND STANDARD OF REVIEW

The City contends the trial court erroneously concluded that Officer Whipple had no legal basis to ask defendant to exit the vehicle for further investigation and, therefore, the seized evidence should not have been suppressed.

 " '[W]e review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard.' " *State v. Pena,* 869 P.2d 932, 939 n. 4 (Utah 1994) (quoting *State v. Brown,* 853 P.2d 851, 854 (Utah 1992)). "[W]hether a specific set of facts gives rise to reasonable suspicion is a determination of law and is reviewable nondeferentially for correctness ... [with] a measure of discretion to the trial judge when applying that standard to a given set of facts." *Id.* at 939.

### ANALYSIS

 " '[S]topping an automobile and detaining its occupants constitute a "seizure" within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.' " *State v. Case,* 884 P.2d 1274, 1276 (Utah Ct.App.1994) (alterations in original) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). "A limited crime investigation stop, as defined by *Terry v. Ohio* and its progeny, must meet a two-prong test to overcome the Fourth Amendment's prohibition against unreasonable seizures. First, the officer's initial stop must be justified; second, subsequent actions must be within the scope of the circumstances justifying the stop." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

### Reasonable Suspicion

 We first examine whether Officer Whipple had reasonable suspicion to justify detaining defendant. "While the required

level of suspicion is lower than the standard required for probable cause to arrest, the same totality of facts and circumstances approach is used to determine if there are sufficient 'specific and articulable facts' to support reasonable suspicion." *Id.* (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). "[A]n officer may stop and question a person 'when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.' " *Pena,* 869 P.2d at 940 (quoting *United States v. Place,* 462 U.S. 696, 702–03, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).[1] The facts supporting reasonable suspicion may come from the officer's own observation as well as "information, bulletins, or flyers received from other law enforcement sources." *Case,* 884 P.2d at 1276–77; *see also Pena,* 869 P.2d at 940 ("In determining whether such reasonable suspicion exists, we have indicated that under certain circumstances, police officers can rely on a dispatched report in making an investigatory stop."). A *Terry* stop made in objective reliance upon a flyer or bulletin is proper "if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop." *United States v. Hensley,* 469 U.S. 221, 233, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). Stated another way, "the legality of a stop based on information imparted by another will depend on the sufficiency of the articulable facts known to the [officer] *originating* the information or bulletin subsequently received and acted upon by the investigating officer." *Case,* 884 P.2d at 1277. However, the investigating officer need not be actually informed of all the underlying facts known to the originating officer that establish reasonable suspicion. *See Case,* 884 P.2d at 1277 n. 5 (citing *Hensley,* 469 U.S. at 232, 105 S.Ct. at 682); *see also State v. Bruce,* 779 P.2d 646, 649–51 (Utah 1989); *State v. Seel,* 827 P.2d 954, 960 (Utah Ct.App.), *cert. denied,* 836 P.2d 1383 (Utah 1992); 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(i), at 233–35 (1996).

---

1. This standard is also codified as follows:
 A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.
 Utah Code Ann. § 77–7–15 (1995).

In *Case*, this court concluded that there was no factual basis for reasonable suspicion to dispatch an officer by radio to a suspected car prowl or vehicle burglary at the University of Utah around midnight. *See Case*, 884 P.2d at 1278–80. In that case, the officer was given only the description of a suspect and the location of the suspected crime. It was unknown who reported the suspected crime and what information was provided. *See id.* at 1278. This court held, "[m]erely providing descriptive information to an officer about *whom* to stop, by itself, is not enough to justify the stop if there are no articulable facts pointed to which establish *why* a stop was to be made." *Id.*

 This court has recently held that an informant's tip constitutes reasonable suspicion to justify a detention or seizure of a vehicle and its driver if the information is reliable, provides sufficient detail of criminal activity, and is confirmed by the investigating officer. *See Kaysville City v. Mulcahy*, 943 P.2d 231, 234 (Utah Ct.App.1997). A tip from a citizen informant who gives his or her name is highly reliable because the police may verify the information and it subjects the informant to penalty if the information is false. *See id.* Furthermore, unlike a paid police informant, the uncompensated citizen-informer's motive is community concern rather than self interest. *See id.* In *Mulcahy*, as in the instant case, the informant was an identified citizen-informer who gave police his name and address along with a description of the suspected vehicle. *See id.*

The second factor addresses whether the informant provides enough detail about the criminal activity, i.e., illegal activity observed, description of the vehicle, license number, and location to support reasonable suspicion. *See id.* In *Mulcahy*, the informant timely reported personally observing a drunk individual leaving his residence in a white, possibly Toyota, car heading in a particular direction. *See id.* 943 P.2d at 237.

The third factor is whether the investigating officer is able to verify the information provided by the informant. *See id.* This does not require the officer to observe the reported behavior, e.g., indications of driving drunk in *Mulcahy*; it is enough that the officer verified the car's description and location within a few minutes of the report. *See id.*

 Evaluating the facts now before us against *Case* and *Mulcahy*, we conclude that the information provided by Hafen established reasonable suspicion of criminal activity. Hafen was a citizen-informer who informed dispatch that while at work at Arby's, he had just personally observed a driver come through the drive-through window with an open can of beer. Hafen also provided the plate number, make, model, and color of the truck, along with his telephone number and location. Dispatch later returned Hafen's call and Hafen informed dispatch where the vehicle had moved. In short, Hafen provided the information and detail necessary to establish reasonable suspicion. Hafen was a reliable citizen witness who provided detailed information of the criminal violations he personally observed and the description of defendant's vehicle. This information was verified by Officer Whipple, who located the described vehicle at the described location within minutes of receiving the information from dispatch.[2] Therefore, Officer Whipple's detention of defendant was supported by reasonable suspicion.

### Scope of Detention

 The second prong of the *Terry* analysis asks whether the scope of the detention was reasonably related to the circumstances that justified the stop. *See Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. There is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Id.* at 21, 88 S.Ct. at 1879 (alteration in original) (citation omitted). When a stop is made, the detention "must be temporary and last no longer than is necessary to effectuate the

---

2. Officer Whipple testified that dispatch informed him that an Arby's employee working at the drive-through window had seen an open container in the subject vehicle. Thus, Officer Whip- ple knew the underlying facts for a possible violation and did not merely rely on a description of who to stop.

purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). "[O]nce the occupants of the vehicle have satisfied the reasons for the initial stop, the officer must permit them to proceed." *State v. Sepulveda,* 842 P.2d 913, 917 (Utah Ct.App.1992). The City contends that Officer Whipple's request that defendant leave his food in the vehicle and step out onto the street for observation was permissible. We agree.

The purpose for the stop in the instant case was to determine if defendant had an open container in the vehicle and whether he had been drinking. Officer Whipple's observations while defendant was eating inside his vehicle, and the subsequent warrants check, did not confirm or dispel Officer Whipple's reasonable suspicion that defendant had an open container in his vehicle and could possibly be under the influence of alcohol. When an officer has reasonable suspicion of criminal conduct, the officer must diligently pursue a means of investigation likely to confirm or dispel the suspicions quickly. *See United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605 (1985). Officer Whipple's request that defendant exit the vehicle was an appropriate means to quickly confirm or dispel his reasonable suspicion.

Defendant contends that once he denied having open containers in the vehicle and denied drinking alcohol, and once the warrants check came back negative, Officer Whipple had no right to detain and investigate defendant any longer. We disagree. A *Terry* stop can go beyond mere interrogation. *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2(f), at 51–55 (1996). Given Officer Whipple's inability to confirm or dispel his reasonable suspicions while defendant was in his vehicle with his food, Officer Whipple's request that defendant exit his vehicle was permissible. Balancing the potential public safety risk against the minimal intrusion of asking defendant to step outside his vehicle, we conclude that the detention and investigation by Officer Whipple was not an intrusion into defendant's right against unreasonable search and seizure.

CONCLUSION

The informant's tip in this case provided the reasonable suspicion for the detention. The scope of the detention was limited to its purpose, i.e., determining whether defendant had an open container in his vehicle and whether he had been drinking. On balance, Officer Whipple's investigation outside defendant's vehicle was reasonable.

We therefore reverse the suppression order and remand the case for such further proceedings as may now be appropriate.

BILLINGS and GREENWOOD, JJ., concur.