STATE of Utah, Plaintiff and Appellee,

v.

Frank ROTH, Defendant and Appellant.

No. 910100–CA.

Court of Appeals of Utah.

Feb. 21, 1992.

Richard P. Mauro (argued) Salt Lake Legal Defender Assoc., Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Marian Decker (argued), Asst. Atty. Gen.,

Governmental Affairs, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Frank Roth appeals the lower court's denial of his motion to suppress evidence that he was driving while intoxicated, in violation of Utah Code Ann. § 41–6–44 (1988). We affirm.

## I. FACTS

On December 10, 1989, Frank Roth was arrested for driving while under the influence of alcohol after his vehicle was stopped by a University of Utah police officer. The stop was made on the basis of a police dispatch reporting a drunk driver, as well as the arresting officer's own observations.

Prior to the arrest, Roth had accompanied a female friend to the emergency room at University Hospital, Salt Lake City, Utah. While in the emergency room, two University Hospital security officers observed Roth "getting vocal" with the emergency room clerk. The officers also observed that Roth's eyes were glazed, that his speech was slurred, that he smelled strongly of alcohol, and that he was having trouble standing. They concluded that Roth was intoxicated.

When the officers requested that Roth leave the emergency room, he responded that he was going to get a cup of coffee and then proceed home. Concerned that Roth may attempt to drive, one of the officers, Officer Stout, inquired of Roth's female friend as to where Roth's car was parked. Officer Stout proceeded to the hospital entrance where he observed Roth trying to drive away in a red Pontiac Fiero. He further observed that Roth repeatedly started the vehicle, drove a few feet, stalled, and then "jerked to a stop." Seeing this, Officer Stout asked another hospital security officer to call the University of Utah police dispatch.

Upon receiving the call from the hospital security office, university police dispatched two police officers to investigate the report of an intoxicated male, driving a red Pontiac Fiero, license number 885CSF, as reported by the University Hospital security office.

Arriving at the hospital entrance, one of the officers, Officer Bradfield, spotted a red Pontiac Fiero with a license number matching the description transmitted by the dispatcher. The officer pulled behind Roth and observed that he "was having a hard time driving" and that he was driving "slow and jerky." Based primarily on the dispatch, as well as her own observations, Officer Bradfield stopped Roth's vehicle. She administered several sobriety tests and subsequently arrested Roth for driving while under the influence of alcohol.

Roth filed a motion to suppress, arguing that the arresting officer did not have the requisite suspicion to support the stop. The trial court found that the dispatch from the hospital security office sustained the necessary reasonable suspicion and denied Roth's motion.

The sole issue on appeal is whether the trial court erred in denying Roth's motion to suppress evidence that he was driving while intoxicated, in violation of Utah Code Ann. § 41–6–44 (1988).

## II. STANDARD OF REVIEW

"Because of the trial court's advantageous position in determining the factual basis for a motion to suppress, that determination should not be reversed unless it is clearly erroneous." *State v. Holmes*, 774 P.2d 506, 509 (Utah App.1989) (citing *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987)); *accord State v. Bruce*, 779 P.2d 646, 649 (Utah 1989); *State v. Mendoza*, 748 P.2d 181, 183 (Utah 1987); *State v. Branch*, 743 P.2d 1187, 1189 (Utah 1987), *cert. denied*, 485 U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988). Accordingly, absent clear error, "we uphold a trial judge's factual assessment underlying a decision to grant or deny a suppression motion." *Bruce*, 779 P.2d at 649 (citations omitted).

## III. ANALYSIS

It is well established that a police officer's stop is a "seizure" and therefore subject to Fourth Amendment protections. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *Sandy City v. Thorsness,* 778 P.2d 1011, 1012 (Utah App.1989). Thus, a stop "can be justified only upon a showing of reasonable suspicion that defendant had committed or was committing a crime or that he was stopped incident to a traffic offense." *Thorsness,* 778 P.2d at 1012 (citation omitted); *accord State v. Dorsey,* 731 P.2d 1085, 1087 (Utah 1986); *State v. Holmes,* 774 P.2d 506, 507–08 (Utah App.1989); *State v. Baird,* 763 P.2d 1214, 1216 (Utah App.1988).

In order to satisfy the reasonable suspicion inquiry, it must be determined if, from the facts apparent to the officer and the reasonable inferences drawn therefrom, that officer would reasonably suspect that defendant was driving while intoxicated. *Thorsness,* 778 P.2d at 1012 (citing *Baird,* 763 P.2d at 1216); *accord State v. Bruce,* 779 P.2d 646, 650 (Utah 1989). This suspicion must be "based upon articulated 'objective facts' then apparent to the officer." *Thorsness,* 778 P.2d at 1012. "Whether there are objective facts to justify such a stop depends on the 'totality of the circumstances.'" *Holmes,* 774 P.2d at 508, (quoting *State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987)).

In the present case, Roth argues that the dispatch was not based on articulable facts to support reasonable suspicion of the commission of a public offense, that the dispatcher did not communicate to the investigating officers sufficient factual foundation for the dispatch, and that the informant was not objectively reliable. Therefore, Roth argues that the stop was violative of his Fourth Amendment rights, as well as his rights under article I, section 14

of the Utah Constitution and Utah Code Ann. § 77–7–15 (1990).[1] We disagree.

As to Roth's first argument, the Utah Supreme Court has previously held that a police dispatch based on articulable facts supporting reasonable suspicion of an attempt or commission of a public offense may be relied upon by police officers in stopping a vehicle and making further investigation. *Bruce,* 779 P.2d at 650. The court stated:

> [I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. If the flyer [or bulletin] has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment.

*Id.* (quoting *United States v. Hensley,* 469 U.S. 221, 232–33, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985)).

In the case at bar, the dispatch issued was based on articulable facts. The dispatcher informed the investigating officers of a "drunk driver," not the mere possibility of a drunk driver. *See, e.g., Playle v. Commissioner of Pub. Safety,* 439 N.W.2d 747, 748 (Minn.App.1989). Moreover, the dispatcher provided a gender description of the driver, the make and color of the automobile, the license number, and the vehicle's location. These articulated facts supported the forming of reasonable suspicion by the dispatcher of the commission of an offense that justified the transmission of the dispatch. Consequently, because specific facts supported reasonable suspicion to prompt the dispatch, the arresting officer properly relied on the dispatch in executing the stop.

1. Roth alleges violations of article I, section 14 of the Utah Constitution and Utah Code Ann. § 77–7–15 (1990) as independent bases for this appeal. However, he fails to proffer any explanation as to how this court's analysis should differ under either of these sections. For that

reason, we decline to address his state claims separately. *See generally State v. Larocco,* 794 P.2d 460, 465 (Utah 1990) (analyzing article I, section 14 provision where analysis under Federal Constitution may differ).

Secondly, Roth argues that the dispatcher did not communicate to the police officers a sufficient factual foundation for the dispatch to support the officer's stop. He cites *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989), for the proposition that a reasonably founded suspicion to stop cannot be based exclusively on receipt by a stopping officer of a radio dispatch without factual foundation for the relayed message. *Id.*, 438 N.W.2d at 136. In *Thompson*, the Nebraska Supreme Court held that the stop of defendant's vehicle was illegal because the police dispatch reported only a "suspicious car in a certain area" without relaying a basis for the suspicion. *Id.*

However, in the case at bar, the dispatcher did indeed communicate a factual foundation for the dispatch, specifically, the existence of a drunk driver along with a description of the driver's vehicle, license number, and location. The specific factual foundation provided in the dispatch equipped the arresting officer with sufficient reasonable suspicion to stop Roth's car.

Lastly, Roth challenges the reliability of the informant, arguing that the information reported to the dispatcher was not objectively reliable and therefore did not support the stop. Roth cites *State v. Black*, 80 Or.App. 12, 721 P.2d 842 (1986), wherein the Oregon Court of Appeals ruled that an anonymous tip could not be the basis for a stop where there was no indicia of reliability and the officer's observation did not corroborate the tip.

However, *Black* is inapposite. First, the case at bar does not involve an anonymous tip. It is clear that the university police dispatcher and Officer Bradfield knew that the report of a drunk driver originated at the University Medical Center security office. By identifying itself, the hospital security office made it possible for the police to verify the facts underlying the report. *See Layton City v. Noon*, 736 P.2d 1035, 1038 (Utah App.1987). Further, unlike an anonymous informant, a primary purpose of the security office is to protect its employees, patients, and the general public. The fact that the security officers garnered the information in the course of their duties and then caused that information to be relayed to police officers fairly protects against speculative or unreliable reports. Accordingly, given the reliability of the source, the police dispatcher was justified in issuing the dispatch, and Officer Bradfield had reasonable suspicion to make the stop premised upon the security office tip. *See State v. Grovier*, 808 P.2d 133, 135 (Utah App.1991).

Furthermore, unlike the facts in *Black*, Officer Bradfield's own observations corroborated the dispatcher's report. She testified that when she approached the hospital entrance, she observed a vehicle matching the description relayed by the dispatcher. Moreover, she testified that as she pulled behind the vehicle, the car "was having a hard time moving, it was going really slow and jerky." The Supreme Court, in *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), held that "where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone." *Id.*, 401 U.S. at 567, 91 S.Ct. at 1036 (citations omitted). The Court continued, "the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the [offense] or ... were in the process of committing the [offense]." *Id.*

In the case at bar, the police dispatch may have been the initial impetus for the officer's suspicion that Roth was driving while intoxicated. However, Officer Bradfield's own observations corroborated the dispatched report of a drunk driver exiting the University Medical Center in a red Pontiac Fiero. Therefore, the officer's observations, coupled with the police dispatch, sustain the trial court's determination that there was reasonable suspicion to stop Roth's vehicle.

## IV. CONCLUSION

In sum, Officer Bradfield had reasonable suspicion to make the stop of Roth's ve-

hicle. Where, as here, a reliable source with reasonable suspicion based on articulable facts reports the commission of a crime, based on the relayed facts, the dispatcher communicates the information to police, and the responding officer's own observations corroborate the dispatch, we find that reasonable suspicion exists for the stop. We, therefore, affirm the lower court's denial of Roth's motion to suppress evidence that he was driving while intoxicated.

BENCH and BILLINGS, JJ., concur.