**H. Glenn OLSON, Plaintiff and Appellee,**

v.

**PARK–CRAIG–OLSON, INC.; J. Samuel Park; and Ellis Edward Craig, Defendants and Appellants.**

No. 900545–CA.

Court of Appeals of Utah.

Aug. 14, 1991.

Brent R. Armstrong, Jeffrey Weston Shields (argued), Paul M. Simmons, Suitter, Axland, Armstrong & Hanson, Salt Lake City, for defendants and appellants.

Reed L. Martineau, Bryce D. Panzer, (argued), Snow, Christensen & Martineau, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

H. Glenn Olson (Olson) brought an action against Park–Craig–Olson, Inc., (PCO), J. Samuel Park (Park), and Ellis E. Craig (Craig) for indemnity and contribution for amounts paid on certain loans. Park filed a counterclaim for unreimbursed expenses. The trial court dismissed Park's counterclaim and awarded summary judgment to Olson. Park and PCO appeal the dismissal of the counterclaim and the grant of summary judgment. We affirm in part, reverse in part, and remand.

## FACTS

Park, Craig, and Olson were shareholders in PCO, a corporation which owned and operated six Marie Callender restaurants in Utah and California. Park was the majority shareholder; he held 54.33 percent of the outstanding shares. Craig owned 29 percent, and Olson owned the remaining 16.67 percent of the outstanding shares.

PCO incurred obligations to First Security Bank (the bank), which were in turn personally guaranteed by Park, Craig, and Olson. The first note was in the principal amount of $215,000, and the second was in the principal amount of $225,000. Park, Craig, and Olson also acted as guarantors on other obligations, including several real estate leases for the restaurant locations, and a franchise contract with the Marie Callender franchisor. Park, however, was not a guarantor on the lease for the California restaurant.

In January 1985, Park sold his interest in PCO to the Marsh Group, an investment

partnership. A little more than two years later, the Marsh Group defaulted on its payments to Park, and Park took steps to repossess his shares in PCO. He regained possession of the shares in September 1987. Park learned PCO was in severe financial distress and that the value of the PCO shares was in serious jeopardy. The bank sued PCO in June 1987, after PCO defaulted on both notes. Park resumed an active role in PCO management and vigorously sought refinancing and negotiated with creditors. Park's efforts resulted in Olson's release from his guaranties of several of the real estate leases, including one significant lease, namely for the California restaurant on which Park was himself not a guarantor. Park was required to remain as a guarantor on the lease for the West Valley City restaurant, although Olson was released from liability. Park also successfully negotiated the forgiveness of substantial past due franchise fees.

Park reached a settlement with the bank in which Park, Craig, and PCO, were released from the notes in exchange for a payment of $235,000. After the sale of PCO's remaining assets to the Marie Callender franchisor, Park was fully reimbursed for his payment to the bank. As part of the settlement, the bank reserved its rights to seek an additional $80,000 payment from Olson. Ultimately the bank obtained a judgment against Olson and he paid over $84,000 to the bank.

Olson sued Park, Craig, and PCO, seeking indemnity from PCO and contribution from Craig and Park for the amounts he paid on the judgment arising from the bank notes. Park counterclaimed against Olson for reimbursement for personal services and expenditures in his efforts to avoid financial disaster for PCO and its shareholders and for managing PCO during its final year of operation. The trial court granted summary judgment in favor of Olson and dismissed Park's counterclaim. Olson was also awarded attorney fees against PCO.

## SUMMARY JUDGMENT

■ Summary judgment is appropriate "only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Projects Unlimited v. Copper State Thrift*, 798 P.2d 738, 743 (Utah 1990) (quoting *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990)); Utah R.Civ.P. 56(c). In our review of whether summary judgment was properly granted, we examine the facts in the light most favorable to the losing party. *Donahue v. Durfee*, 780 P.2d 1275, 1276 (Utah App.1989). "[W]e review the trial court's legal conclusions for correctness and give no particular deference to that court's view of the law." *Projects Unlimited*, 798 P.2d at 743.

Park argues that Olson was not entitled to summary judgment because the court erred in its conclusion that Olson was owed contribution from Park. Park claims he was not liable for contribution because he paid more than his proportionate share of PCO's debt on the bank notes, while Olson did not pay more than his fair share. Park also alleges that the court erred in its method of calculating the amount of Park's liability, and he additionally contests the award of attorney fees. Olson counters that none of these arguments were raised before the trial court, and asks that we not consider them on appeal. Olson's argument appears well-taken. In his memorandum in opposition to Olson's renewed summary judgment motion, Park only argued that: (1) the motion was premature since it was filed prior to the date scheduled for the closing of discovery, (2) the motion suggested that Park failed to file a counterclaim as ordered by the court, when the court had not so ordered, and (3) the motion was not ripe. Park does not pursue any of these arguments in this appeal.

■ We normally will not consider arguments on appeal which were not raised before the trial court. *See, e.g., James v. Preston*, 746 P.2d 799, 801 (Utah App. 1987). Park urges us to consider his arguments, stating that they were "broadly speaking ... raised below" and suggesting that the trial court "implicitly considered" the arguments now raised on appeal. Park

refers us to a number of cases establishing an exception to the general rule, all of which suggest that standing issues may be raised for the first time on appeal.[1] *See, e.g., Blodgett v. Zions First Nat'l Bank,* 752 P.2d 901, 904 (Utah App.1988) (court or parties may raise standing concerns for the first time on appeal). *But see State v. Marshall,* 791 P.2d 880, 885 (Utah App.) (Fourth Amendment standing cannot be raised for first time on appeal), *cert. denied,* 800 P.2d 1105 (Utah 1990). Park suggests we voraciously expand the bite of the standing exception, urging that the expanded exception be applied to him. He posits that issues of standing affect substantive rights to maintain an action, and since maintenance of his action is in peril if we do not consider his arguments, we must proceed as if the arguments concerned standing and reach their merits. We do not regard Park's arguments on appeal as touching upon standing in any meaningful sense. We decline to enlarge the standing exception to our long-standing rule as argued by Park. Such an expansion of the exception would essentially gut the rule requiring that arguments raised on appeal have first been raised below.

Park also supports his position that the arguments were raised below by submission of an affidavit of his trial counsel discussing an "active dialogue" that was held in chambers and without a court reporter, concerning these arguments. However, we are constrained to disregard the affidavit as it has not been made part of the record before us. The affidavit presents but one account of an unrecorded conversation in which critical issues were allegedly addressed.

■ The district courts of this state are courts of record, Utah Const., art. VIII, § 1; Utah Code Ann. § 78–1–2 (1987), and a record of all its official proceedings should be made. *See, e.g., State v. Suarez,* 793 P.2d 934, 936 n. 3 (Utah App.1990); *Birch v. Birch,* 771 P.2d 1114, 1116 (Utah App.1989); *Briggs v. Holcomb,* 740 P.2d 281, 282–83 (Utah App.1987). This precept "applies to conferences in chambers as well as courtroom proceedings." *Onyeabor v. Pro Roofing, Inc.,* 787 P.2d 525, 527 (Utah App.1990). "The burden is on the parties to make certain that the record they compile will adequately preserve their arguments for review...." *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1045 (Utah 1983). The role of the appellate court is to sift the parties' arguments in light of "the facts found by the trial court and square them with the law." *State v. Vigil,* 815 P.2d 1296, 1299. We may, however, weigh only those facts and legal arguments preserved for us in the trial court record. *Ringwood v. Foreign Auto Works, Inc.,* 786 P.2d 1350, 1358–59 (Utah App.1990). Counsel's recollection of the course of proceedings is no substitute for a record of those proceedings.

■ Rule 11 of the Utah Rules of Appellate Procedure establishes a procedure for supplementing the record when necessary. Utah R.App.P. 11(h). But a motion under Rule 11(h) is appropriate only when the record must be augmented because of an omission or exclusion, or a dispute as to the accuracy of reporting, *State v. Moosman,* 794 P.2d 474, 478–79 & n. 17 (Utah 1990), and not to introduce new material into the record. *Id.* at 478 n. 17. The rule provides a reliable method for the reconstruction of events when the record has failed in some limited respect. *See also Jeschke v. Willis,* 793 P.2d 428, 428–29 (Utah App.1990) (in considering a Rule 11(h) motion, court may examine prior opportunity to introduce material, necessity of supplemental material, and potential delay). When the record appropriately needs supplementation, Rule 11(h) is the method to be implemented.

■ Park has not sought leave to supplement the record in accordance with Rule 11(h), and we cannot consider his counsel's affidavit, which appears as an unsolicited addendum to Park's brief. A careful review of the record on appeal persuades us

---

**1.** Park enumerates additional grounds for considering his arguments for the first time on appeal, none of which we find persuasive.

that Park has not preserved the arguments advanced in opposition to the judgment in Olson's favor and we decline to consider them. On the record properly before us, and given the issues raised on appeal, we find no error in the grant of summary judgment to Olson.

## RULE 12(b)(6) DISMISSAL OF PARK'S COUNTERCLAIM

■■■ Dismissal of a claim under Rule 12(b)(6) is a severe measure given the liberality of notice pleading, and must be granted only when it is apparent that under no set of facts proven in support of the claim as pleaded would a party be entitled to relief. *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). Rule 12(b)(6) provides that a pleading may be dismissed for "failure to state a claim upon which relief can be granted." Utah R.Civ.P. 12(b)(6). When challenging a dismissal under Rule 12(b)(6) the appellant is entitled to a generous standard of review. We "construe the [pleading] in the light most favorable to the [claimant] and indulge all reasonable inferences in [the claimant's] favor." *Mounteer v. Utah Power & Light Co.*, 773 P.2d 405, 406 (Utah App.1989). *See also Arrow Indus. v. Zions First Nat'l Bank*, 767 P.2d 935, 936 (Utah 1988) (Rule 12(b)(6) motion appropriate only "where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim.").

■ Each party relies on *Davies v. Olson*, 746 P.2d 264 (Utah App.1987), in which this court distinguished the variants of *quantum meruit* and diagrammed the elements of each. Park's counterclaim alleges a contract implied in law, also referred to as unjust enrichment or quasi-contract. In order to succeed on this claim, Park must show Olson received a benefit from Park's efforts, Olson's appreciation or knowledge of the benefit, and that the circumstances make it unjust for Olson to retain the benefit without reimbursing Park for it. *Id.* at 269. If Park succeeded in establishing these elements, he could recover the reasonable value of his services inuring to Olson's benefit. *Id.*

Olson asserts that, even generously indulging all reasonable inferences, no set of facts proved in support of the counterclaim could sustain Park's theory of unjust enrichment. Tempering our review with a liberal construction of the counterclaim, as we must, we disagree. We need not dwell on the first element, i.e., that a benefit be conferred on Olson, as Olson conceded in his own deposition that Park's successful efforts to release Olson from several obligations was beneficial to Olson. The remaining issues concern Olson's appreciation or knowledge of the benefit, and whether the circumstances make it unjust for Olson to retain that benefit gratis. Support for these elements of the claim can be reasonably inferred from the record.

■ Olson relies on the subtle distinction of whether he knew that Park *in his individual capacity*, as opposed to Park acting as operating officer of PCO, conferred a benefit upon him. Olson proclaims that it would be "an unjustified leap of faith, and not a reasonable inference" for us to interpret the record in Park's favor. While the record does show that Olson did not entirely countenance Park's actions, we find a far wider chasm between references in the record and Olson's claim of ignorance of Park's actions as an individual shareholder in contradistinction to his actions as an operating officer. We agree with Olson that this unique situation does not neatly conform to "textbook examples of contract implied in law." However, our task is not to pass on the ultimate merits of Park's claim—we conduct our inquiry only far enough to discern some set of "facts which could be proved in support of [his] claim." *Arrow Indus.*, 767 P.2d at 936. The record amply supports a reasonable inference that Olson knew of the benefit conferred by Park acting as a fellow shareholder. On remand, the parties will have their opportunity to introduce evidence to prove whether that reasonable inference can be adequately supported or refuted.

Park must also prevail on the issue of whether it would be unjust for Olson to retain the benefit of Park's services without payment. Olson claims that Park's ef-

forts to save PCO from financial ruin were motivated by Park's understandable desire to salvage his own investment, and argues that any benefit to him is merely incidental. Yet Park personally negotiated agreements which released Olson from liability, while leaving Park assuming even greater potential liability, at least in the short term.[2] Although there may be other factors which would counter this apparent inequity, viewing the record in the light most favorable to Park, it is clear he has a reasonable prospect of success on this aspect of his claim.

Olson may yet prevail against Park's counterclaim for reimbursement. Nonetheless, the record does not persuade us that there is no set of facts under which Park might succeed, and we must reverse dismissal of his counterclaim and remand for further proceedings addressed to the merits of his claim.

## CONCLUSION

The assertions contained in Park's counsel's affidavit are not properly before us.

Accordingly, we cannot consider them in our decision. Park's arguments challenging the award of summary judgment on the question of contribution owed to Olson are raised for the first time on appeal and we will not entertain them. The summary judgment on Olson's complaint is beyond reproach given the arguments made and the state of the record.

The dismissal of Park's counterclaim is reversed and the case remanded for a trial on the merits of the counterclaim or such other proceedings as may be proper.

BILLINGS and GARFF, JJ., concur.

---

**2.** Park successfully obtained a release of Olson's liability on the lease for the West Valley City restaurant. Park was required to remain liable. While Park and Olson were formerly each liable for the full amount of the lease, Olson's release effectively terminated any right that Park would have had against Olson for liability if Park were required to pay on his guaranty.