2003 UT App 107

**STATE of Utah, Plaintiff and Appellee,**

v.

**Somnuk CHANSAMONE, Defendant and Appellant.**

No. 20020235–CA.

Court of Appeals of Utah.

April 10, 2003.

Alisha Giles and Aric Cramer, Cramer Cramer & Adair LLC, Bountiful, for Appellant.

Mark L. Shurtleff, Attorney Generals Office and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

BILLINGS, Associate Presiding Judge:

¶1 Somnuk Chansamone appeals the trial court's order denying his motion to suppress evidence seized during a warrantless search. We affirm.

## BACKGROUND [1]

¶2 On the evening of October 12, 2001, Rex Stacey was working as a security guard

---

1. We state the facts in a light most favorable to the trial court's ruling denying Chansamone's

(or "bouncer") at Bogey's, a night club in Clearfield, Utah. Stacey became suspicious of Chansamone after watching him go in and out of the bathroom "three or four times in an hour." After following Chansamone into the bathroom, Stacey saw Chansamone and another man standing shoulder to shoulder in the doorway of the bathroom's only stall. Both men faced Stacey, who was about five or six feet away. Stacey observed Chansamone holding "a baggie with some white stuff in it," with both men looking down at the baggie.

¶ 3 Knowing police were in the building, Stacey kept both men in the bathroom and radioed downstairs, asking another bouncer to send the police. Downstairs, the other bouncer informed Officer Jim Cortwright of the possibility of drugs upstairs in the bathroom. When Officer Cortwright arrived upstairs, he found Chansamone and the other man inside the bathroom, with Stacey and another bouncer just inside the door. Stacey pointed out Chansamone and told Officer Cortwright that Stacey had shortly before witnessed a baggie with white powder in Chansamone's hand that Stacey believed to be drugs.

¶ 4 Officer Cortwright then entered the bathroom and saw Chansamone kneeling in front of the toilet, apparently vomiting. After watching Chansamone for fifteen to twenty seconds, Officer Cortwright determined Chansamone was faking, as nothing was coming out of his mouth and his motions appeared false. When Officer Cortwright asked Chansamone if he was okay, Chansamone kept reaching for his right pants pocket and making sounds as if he were sick.[2] Concerned about Chansamone's repeated motions toward his right pants pocket, Officer Cortwright had Chansamone stand up. Officer Cortwright then turned Chansamone to face the wall and asked him to put his hands on the wall. Instead of complying, Chansamone reached down again, with his right hand, toward his right pants pocket.

Officer Cortwright grabbed Chansamone's right hand and again told him to put it up on the wall, and Chansamone complied.

¶ 5 Next, Officer Cortwright felt the outside of Chansamone's right pants pocket, and after "feel[ing] something inside," searched the pocket. Officer Cortwright pulled out a "small plastic baggie with a white powdery substance inside" that later tested positive for cocaine. After finding the baggie, Officer Cortwright placed Chansamone under arrest.

¶ 6 Prior to October 12, 2001, Officer Cortwright and Stacey had interacted at Bogey's every Thursday and Saturday evening for the previous eight to nine months. During that time, Officer Cortwright made at least one arrest based on information from Stacey. Officer Cortwright considered Stacey to be a credible individual. Additionally, Stacey had observed controlled substances approximately six times in the previous six years.

¶ 7 Chansamone moved to suppress the cocaine, and after a hearing on December 26, 2001, the trial court denied Chansamone's motion. Thereafter, Chansamone successfully petitioned this court for interlocutory review.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 Chansamone argues the trial court erred in denying his motion to suppress. We review the trial court's legal conclusions on a motion to suppress for correctness, "with a measure of discretion given to the trial judge's application of the legal standard to the facts." *Brigham City v. Stuart*, 2002 UT App 317, ¶ 5, 57 P.3d 1111 (quotations and citation omitted).

## ANALYSIS

■ ¶ 9 Chansamone claims Officer Cortwright's warrantless search did not fall within a recognized exception to the Fourth Amendment's warrant requirement. The Fourth Amendment to the United States Constitution provides that "[t]he right of the

---

motion to suppress. *See, e.g., State v. Tetmyer*, 947 P.2d 1157, 1158 (Utah Ct.App.1997).

2. Officer Cortwright testified, "I was asking if [Chansamone] was okay. And he kept reaching for his [right] pants pocket during the time I was talking to him." "[E]ach time I'd ask him if he was okay he would almost regurgitate ... and he did that like three or four times, maybe even more."

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "As a result, we generally consider searches conducted without the benefit of a properly issued warrant to be unreasonable." *State v. Valenzuela*, 2001 UT App 332,¶ 9, 37 P.3d 260. However, exceptions to this rule include where an officer conducts a search incident to arrest. *See, e.g., State v. Gallegos*, 967 P.2d 973, 978–79 (Utah Ct.App.1998).

¶ 10 We conclude Officer Cortwright's search was a valid search incident to arrest. Although the trial court's findings focus more on exigent circumstances as a basis for excusing the warrant requirement in this case, the search incident to arrest conclusion is more readily supported by the record and fully consistent with the trial court's ruling.[3]

¶ 11 A search of an arrestee's person is valid without a warrant, despite the fact that it shortly precedes the arrest, "so long as the arrest and the search are substantially contemporaneous and probable cause to effect the arrest exists independent of the evidence seized in the search." *State v. Banks*, 720 P.2d 1380, 1383–84 (Utah 1986). "[P]robable cause justifying an arrest" requires " 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *State v. Trane*, 2002 UT 97,-¶ 27, 57 P.3d 1052 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). "Here, because the State predicates its probable cause argument upon information received from an informant, we must examine the totality of the circumstances to determine whether the informant's tip, together with police observations, provided probable cause to arrest [Chansamone]."

*Valenzuela*, 2001 UT App 332 at ¶ 11, 37 P.3d 260 (quotations and citations omitted). "Factors to consider ... include an informant's veracity, reliability[,] and basis of knowledge." *State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992).

¶ 12 "[B]ecause citizen informers, unlike police informers, volunteer information out of concern for the community and not for personal benefit," we presume the reliability and veracity of citizen informers. *Kaysville City v. Mulcahy*, 943 P.2d 231, 235 (Utah Ct.App.1997) (quotations, citations, and footnote omitted). A citizen informant is "an average citizen who is in a position to supply information by virtue of having been a crime victim or witness." *State v. White*, 851 P.2d 1195, 1199 (Utah Ct.App.1993) (quotations and citations omitted).[4] Here, Stacey gained and reported his information in the course of performing his regular job, and there is no indication Stacey received anything in return for the information. Thus, we presume Stacey's reliability and veracity as a citizen informant.

¶ 13 Stacey's reliability and veracity are further bolstered because officer Cortwright knew Stacey's identity, *see State v. Deluna*, 2001 UT App 401,¶ 15, 40 P.3d 1136, and Stacey "had a history of giving reliable information to [Officer Cortwright]," having previously helped effectuate at least one drug arrest. *State v. Bailey*, 675 P.2d 1203, 1206 (Utah 1984). Also, Stacey's "basis of knowledge" is strong because he based his information on "personal observations" of Chansamone, and because of his past experience witnessing illegal drugs. *Purser*, 828 P.2d at 517.

¶ 14 Because the reliability of the information is strong, less corroboration of the details of the tip is necessary. *See Deluna*, 2001 UT App 401 at ¶ 21, 40 P.3d 1136. Nevertheless, the detail of Stacey's informa-

---

3. The trial court did not specifically find the search was incident to arrest, but " '[i]t is well settled that we may affirm a judgment of a lower court if it is sustainable on any legal ground or theory apparent on the record.' " *State v. Comer*, 2002 UT App 219,¶ 21 n. 8, 51 P.3d 55 (quoting *State v. Finlayson*, 2000 UT 10,¶ 31, 994 P.2d 1243).

4. In contrast, "[a] police informant is one who gains information through involvement in criminal activity or who is motivated ... by pecuniary gain." *Kaysville City v. Mulcahy*, 943 P.2d 231, 235 n. 2 (Utah Ct.App.1997) (quotations and citation omitted) (omission in original).

tion and Officer Cortwright's corroboration both support our probable cause determination. Stacey pointed out Chansamone to Officer Cortwright and informed him that Chansamone was in possession of a baggie with white powder in it that Stacey saw and believed to be drugs. Although he did not see the cocaine prior to searching Chansamone, Officer Cortwright observed Chansamone kneeling in front of the toilet, faking vomiting. Officer Cortwright also saw Chansamone repeatedly reach for his right pants pocket, and Chansamone initially refused to comply with the officer's request to keep both hands on the wall, instead reaching again for his right pants pocket. Under these circumstances, it was reasonable for Officer Cortwright to believe Chansamone had contraband in his right pants pocket and thus reasonable for the officer to arrest Chansamone for possession of drugs.

¶ 15 Looking to the totality of the circumstances, Officer Cortwright had probable cause to arrest Chansamone for possession of a controlled substance prior to the search.[5] The informant's veracity, reliability, and basis of knowledge are all strong, and the officer's observations of Chansamone were consistent with Stacey's information.

¶ 16 In addition, we readily conclude the arrest and search were "substantially contemporaneous." *Banks,* 720 P.2d at 1384. To qualify, the search "cannot be remote in time or place from the arrest." *Gallegos,* 967 P.2d at 978 (quotations and citations omitted). Officer Cortwright arrested Chansamone in the same location as the search. We need not define how much time is too remote, for Officer Cortwright conducted the search immediately before making the arrest. *See State v. Anfield,* 313 Or. 554, 836 P.2d 1337, 1341 (1992) ("The fact that the search preceded the formal arrest by a few moments [does] not keep the search from being incident to the arrest, so long as there was probable cause for the arrest and the initial search was related to the reason for the arrest."). Therefore, we conclude the search was incident to arrest and valid.

## CONCLUSION

¶ 17 Because the search was valid as a search incident to arrest, we affirm the trial court's denial of Chansamone's motion to suppress.

¶ 18 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

---

5. Although the trial court did not explicitly find Officer Cortwright had "probable cause," this conclusion is "implicit in the [trial] court's findings of fact and consistent with its suppression order." *State v. Lopez,* 873 P.2d 1127, 1131 (Utah 1994).