2010 UT App 352

**STATE of Utah, Plaintiff and Appellee,**

v.

**Mark D. TALBOT, Defendant and Appellant.**

No. 20080795–CA.

Court of Appeals of Utah.

Dec. 9, 2010.

**114**

---

Jeffery E. Slack, Cedar City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ROTH.

## OPINION

ROTH, Judge:

¶ 1 Defendant Mark D. Talbot appeals the trial court's denial of his motion to suppress evidence, alleging that he was subject to an unconstitutional search and seizure. Talbot also seeks reversal and a new trial, arguing that he was not provided with a critical part of the record—the jury voir dire. We affirm.

## BACKGROUND [1]

¶ 2 In March 2007, after obtaining evidence from multiple sources that Talbot was distributing methamphetamine, the Garfield County Sheriff (the Sheriff) decided to obtain

a warrant to search Talbot's person, home, and vehicle. The Sheriff called a deputy (the Deputy) who was on patrol in the area and told him "what was going on and what had happened." The Sheriff further informed the Deputy that he was in the process of obtaining a search warrant for Talbot's possessions and person and instructed the Deputy to stop and detain Talbot should the Deputy encounter him. Soon after the phone call, while on patrol, the Deputy saw Talbot driving and pulled him over. The Deputy patted Talbot down for weapons and placed him in handcuffs "for [Talbot's] and [the Deputy's] safety." In the meantime, the Sheriff discussed the matter further with another officer who had assisted the Sheriff in taking possession of methamphetamine from a witness who said that Talbot had given him the methamphetamine. Moments after the Deputy had conducted the initial stop, the Sheriff called the Deputy and told him to arrest Talbot. When questioned as to why he did not wait for the search warrant to be issued before giving the instruction to arrest Talbot, the Sheriff explained that he already "had probable cause that ... [Talbot had] distributed methamphetamine[ ] just a few minutes ... earlier."

¶ 3 After placing Talbot under arrest and reading him his Miranda rights, the Deputy searched Talbot's person and found methamphetamine. Other officers also found marijuana and drug paraphernalia during an impound inventory of Talbot's car. Soon afterward, a magistrate granted the search warrant, but the only additional evidence found pursuant to the search warrant was drug paraphernalia in Talbot's home.

¶ 4 Talbot was charged with distribution of a controlled substance with prior convictions, see Utah Code Ann. § 58–37–8(1) (Supp. 2010),[2] possession of a controlled substance in a drug-free zone, see id. § 58–37–8(2), and possession of drug paraphernalia in a drug-free zone, see id. § 58–37a–5(1). Prior to trial, Talbot moved to suppress the evidence that was found on his person and in his

1. Talbot does not challenge the trial court's factual findings, and we therefore accept those findings as true.

2. For convenience of the reader, we cite the current version of the Utah Code because the relevant sections are unchanged from the versions in effect when the events underlying Talbot's convictions occurred.

vehicle following his arrest, arguing that the evidence was obtained as the result of an unconstitutional search and seizure. The trial court denied the motion to suppress, and Talbot was later convicted by a jury.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Talbot challenges the trial court's denial of his motion to suppress the drugs and paraphernalia found on his person and in his vehicle[3] before the search warrant was granted, arguing that this evidence was obtained as the result of an unconstitutional search and seizure. Specifically, he asserts that because the underlying arrest was invalid, the ensuing search incident to his arrest were unlawful. "In an appeal from a trial court's denial of a motion to suppress evidence, we review the trial court's factual findings for clear error[,] and we review its conclusions of law for correctness." *Salt Lake City v. Bench*, 2008 UT App 30, ¶ 5, 177 P.3d 655 (alteration in original) (internal quotation marks omitted). In this case, whether the evidence was lawfully obtained and properly admitted turns on the validity of the underlying arrest. Talbot further argues that he is entitled to a new trial because the jury voir dire is missing from the trial transcript. We, however, do not reach this issue because Talbot has failed to supplement the record.

## ANALYSIS

I. Talbot's Arrest and the Search Incident to His Arrest Were Constitutional.

■ ¶ 6 Talbot asserts that some of the evidence supporting his convictions was obtained as a result of an unconstitutional search and seizure in violation of the Fourth Amendment of the United States Constitution.[4] *See generally* U.S. Const. amend. IV (providing protection from unreasonable

searches and seizures). The Fourth Amendment's protection against unreasonable searches and seizures is applied to the states through the Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1; *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (concluding that the protection granted by the United States Constitution from unreasonable searches and seizures is properly applied to the states through the Fourteenth Amendment); *State v. Anderson*, 910 P.2d 1229, 1233 n. 3 (Utah 1996) (observing the same).

■ ¶ 7 Generally, searches conducted without the benefit of a warrant are per se unreasonable. *See State v. Chansamone*, 2003 UT App 107, ¶ 9, 69 P.3d 293. An exception to this rule, however, "is a search incident to a lawful arrest based on probable cause under exigent circumstances." *State v. Trane*, 2002 UT 97, ¶ 22, 57 P.3d 1052. "A search of an arrestee's person is generally justified and supported by exigent circumstances," which include "protect[ing] officers from weapons," preventing escape, and preventing the concealment or destruction of evidence. *Id.* ¶ 22 n. 3. Talbot does not contend that the Deputy's search did not involve exigent circumstances. Rather, Talbot claims that the arrest was unconstitutional because by arresting him, the Deputy exceeded the Sheriff's instruction to simply detain him. Also pertinent to this analysis is whether the Deputy had probable cause to support Talbot's arrest. We will therefore address each of these issues in turn.

A. Whether the Deputy Exceeded the Sheriff's Instructions Is Not Relevant in Determining Whether Talbot's Arrest Was Constitutional.

¶ 8 Talbot contends that the Deputy exceeded the authority given to him by the

---

3. We refer to both the search of his person and the search of his vehicle together as the search incident to arrest.

4. Talbot also makes a cursory assertion that the search and seizure violated article I, section 14 of the Utah Constitution, but he makes no separate arguments under the state constitution. We therefore consider Talbot's challenge to the search and seizure only under the federal consti-

tution. *See State v. Van Dyke*, 2009 UT App 369, ¶ 17 n. 4, 223 P.3d 465 (interpreting constitutional challenges under both the state and federal constitutions exclusively under the federal constitution where the defendant provided no argument for a different analysis under the state constitution), *cert. denied*, 230 P.3d 127 (Utah 2010).

Sheriff, which Talbot alleges made his arrest and the ensuing search unconstitutional. Specifically, Talbot asserts that the Deputy's actions violated the Sheriff's instructions to merely detain Talbot, arguing that by detaining and handcuffing him, the Deputy "effectively plac[ed] him under arrest." *See generally State v. Applegate*, 2008 UT 63, ¶ 8, 194 P.3d 925 (explaining constitutionally permissible levels of police-to-public encounters, including a detention, which must be supported by reasonable, articulable suspicion, and an arrest, which must be supported by probable cause). He points out that the trial court "found that [Talbot] was stopped while driving" and was then "searched and arrested." [5] Talbot then argues that this violation of the Sheriff's instructions converted the Deputy's actions into an unconstitutional seizure that requires suppression of the resulting evidence. Talbot does not support this claim with any citation to case authority.

¶ 9 The Utah Supreme Court recently ruled in *State v. Harker*, 2010 UT 56, 240 P.3d 780, that "under the Fourth Amendment, courts need not exclude evidence if it is uncovered in a search incident to a constitutionally permissible arrest, even if the arrest is not authorized by statute." *Id.* ¶ 10 (emphasis omitted) (upholding an arrest that was supported by probable cause but prohibited by state statute). In *Harker*, the defendant was arrested after a traffic accident for driving without insurance. *See id.* ¶ 2. The arresting officer did not have a warrant for the defendant's arrest, nor was he authorized by statute to arrest the defendant because the offense did not occur in the officer's presence. *See id.* ¶¶ 9–10 (observing that Utah

Code section 77–7–2(1) requires the underlying offense to occur in the presence of the arresting officer). The officer had probable cause to arrest the defendant, however, based on reasonable inferences from the statements of witnesses as well as his own observations at the scene. *See id.* ¶ 21. The supreme court held that "statutory authority is not required for a warrantless arrest to be considered 'lawful' under the Fourth Amendment." *Id.* ¶ 19 (citing *Virginia v. Moore*, 553 U.S. 164, 176, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008); *see also id.* ¶ 18 (interpreting the word "lawful" to "mean[ ] only constitutionally permissible"). Rather, the supreme court concluded that "all the Constitution requires for an arrest to be 'lawful' is for the arrest to be based on probable cause." *Id.* ¶ 19.

■ ¶ 10 For purposes of this appeal, we accept Talbot's assertion that the Deputy's initial encounter with Talbot was an arrest rather than a detention.[6] Talbot makes no claim that the Deputy's inherent authority as a serving peace officer to arrest malefactors was constrained by anything other than the Sheriff's instructions and constitutional boundaries. Applying the reasoning of *Harker*, we conclude that so long as Talbot's arrest was justified by probable cause, the fact that the Deputy may have exceeded the instructions given to him by the Sheriff has no bearing on whether Talbot's arrest was "lawful" under the Constitution.[7] If an arrest in violation of a statutory restriction does not itself raise constitutional issues, then, a fortiori, an arrest that exceeds a superior's immediate directive in a particular

---

5. The trial court's finding that Talbot was arrested is not as clear as Talbot attempts to portray it because the trial court's explanation of the events did not include any indication of whether the arrest occurred before or after the Sheriff instructed the Deputy to arrest Talbot.

6. The State, citing to *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993) (citing *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993)), maintains that Talbot was merely detained before the Sheriff explicitly instructed the Deputy to arrest him, arguing that the use of handcuffs does not necessarily turn a detention into an arrest. Because resolution of that issue is not necessary to our ultimate decision, we do not reach it here.

7. This conclusion is consistent with other cases where courts have concluded that an officer's exceeding another source of authority in conducting a search was not pertinent to the underlying constitutional analysis. *See, e.g., Scott v. Harris*, 550 U.S. 372, 375 n. 1, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (deviating from a sheriff's instructions was "irrelevant to [the court's Fourth Amendment] analysis whether [the officer] had permission to take the precise actions he took"); *Abney v. Coe*, 493 F.3d 412, 419 (4th Cir.2007) (violating departmental policy was irrelevant to analysis of whether seizure was unconstitutional) (citing *Davis v. Scherer*, 468 U.S. 183, 193–96, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

circumstance does not do so. Therefore, the pivotal question in determining whether Talbot's arrest was constitutional is whether the arrest was supported by probable cause.

B. Probable Cause Existed to Support Talbot's Arrest, and the Collective Knowledge Doctrine Imputes the Probable Cause from the Sheriff to the Deputy.

■ ¶ 11 On appeal, Talbot does not directly challenge the trial court's conclusion that probable cause existed to support his arrest. He appears to argue, however, that although probable cause generally existed to support his arrest, the Deputy did not have probable cause to arrest him based on the Deputy's own knowledge at the time. We conclude that, whatever the limitations on the Deputy's own knowledge of the underlying facts and circumstances, the collective knowledge of his law enforcement colleagues was imputed to him and was sufficient to justify Talbot's arrest.

■ ¶ 12 An officer must have probable cause to make an arrest without a warrant. *See State v. Trane*, 2002 UT 97, ¶ 26, 57 P.3d 1052. The determination of whether probable cause exists depends on "whether from the facts known to the officer, and the inferences [that can] fairly . . . be drawn therefrom, a reasonable and prudent person in [the officer's] position would be justified in believing that the suspect had committed the offense." *Id.* ¶ 27 (alterations and omission in original) (internal quotation marks omitted).

■ ¶ 13 Under the collective knowledge doctrine, also known as the fellow officer rule, facts known to law enforcement officers who are working together may be aggregated to determine whether there is probable cause for an arrest. *See, e.g., State v. Dorsey*, 731 P.2d 1085, 1090 (Utah 1986); *State v. Prows*, 2007 UT App 409, ¶ 13, 178 P.3d 908; *City of St. George v. Carter*, 945 P.2d 165, 168 (Utah Ct.App.1997). As a re-

sult, facts supporting probable cause are not limited "solely [to] the knowledge of the detaining officer." *Prows*, 2007 UT App 409, ¶ 13, 178 P.3d 908 (internal quotation marks omitted). "Rather, the collective knowledge doctrine . . . allows [probable cause] . . . to be based on the totality of the circumstances and the collective knowledge of all the officers involved." *Id.* (internal quotation marks omitted). All that is required is some level of communication or coordination between the officer performing the arrest and the officer or officers with probable cause-related knowledge to confirm that the officers are working as a team. *See United States v. Chavez*, 534 F.3d 1338, 1345–47 (10th Cir. 2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 953, 173 L.Ed.2d 148 (2009).

■ ¶ 14 The collective knowledge doctrine may take on two forms: horizontal collective knowledge and vertical collective knowledge.[8] *See id.* at 1345. Horizontal collective knowledge "subsumes situations where a number of individual law enforcement officers have pieces of the probable cause puzzle, but no single officer possesses information sufficient for probable cause." *Id.* (citing *United States v. Shareef*, 100 F.3d 1491, 1503–04 (10th Cir.1996)); *see, e.g., Dorsey*, 731 P.2d at 1088–90 (concluding that an officer had probable cause to support an arrest based on facts communicated to him by another officer throughout the course of an investigation); *Carter*, 945 P.2d at 167–69 (concluding that an officer had reasonable suspicion to conduct a stop based on facts communicated to him by dispatch and a citizen informant; the officer then gathered more facts to support the continued detention during the course of the stop). "In such situations, the [reviewing] court must consider whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." [9] *Chavez*, 534 F.3d at 1345 (citing *Shareef*, 100 F.3d at 1503–04).

---

8. "[T]he 'horizontal' and 'vertical' collective knowledge categories are by no means mutually exclusive." *United States v. Chavez*, 534 F.3d 1338, 1345 n. 12 (10th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 953, 173 L.Ed.2d 148 (2009).

9. Some courts have restricted the scope of horizontal collective knowledge more than others. In *United States v. Shareef*, 100 F.3d 1491 (10th Cir.1996), the Tenth Circuit recognized that certain courts "mutually impute[ ]" facts supporting

¶ 15 Vertical collective knowledge, on the other hand, subsumes "situation[s] where one officer has probable cause and instructs another officer to act, but does not communicate the corpus of information known to the first officer that would justify the a[rrest]." [10] *id.* at 1345 (emphasis omitted). In such situations, "an officer may rely on the instructions of" other officers to support an arrest "even if that officer himself or herself is not privy to all the facts amounting to probable cause." *Id.* at 1347; *see, e.g., id.* at 1348 (concluding that a patrolman had probable cause to stop and search the defendant's vehicle based on facts known to another officer where that officer simply instructed the patrolman to stop the defendant's vehicle); *Prows,* 2007 UT App 409, ¶¶ 2–4, 14, 178 P.3d 908 (concluding that an officer had reasonable suspicion to support a detention where a citizen informant communicated facts to the sheriff and, based on those facts, the sheriff instructed the officer to stop the defendant's vehicle, although it is unclear what facts, if any, were communicated to the officer). The question in such situations becomes whether the instructing officer has probable cause to support an arrest. *See Chavez,* 534 F.3d at 1344–45. If that officer has probable cause, then the probable cause is "imputed vertically" to the arresting officer, who, although "not intimately involved in an investigation, can rely on the collective knowledge [gathered from that investigation] ... when justifiable conclusions of the ... investigation [have been] conveyed to him." *See id.* at 1346–47 (relying on *United States v. Zamudio–Carrillo,* 499 F.3d 1206, 1207–10 (10th Cir.2007); *United States v. Ramirez,* 473 F.3d 1026, 1037 (9th Cir.2007); *United States v. Williams,* 429 F.3d 767, 771–72 (8th Cir.2005); *United States v. Burton,* 288 F.3d 91, 99 (3d Cir.2002); and *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)).

¶ 16 In this case, the Sheriff had probable cause to support Talbot's arrest. The Sheriff was aware of statements from multiple witnesses about Talbot's use and distribution of methamphetamine; some of those statements the Sheriff had received directly, while other statements had been relayed to him by other officers. Three witnesses stated that Talbot had supplied them with methamphetamine in January 2007, six weeks prior to his arrest. One of those witnesses added that she and Talbot had used methamphetamine that he had supplied. A fourth witness told the Sheriff that Talbot had given him methamphetamine in February 2007 and agreed that he would report to the Sheriff if Talbot again offered him methamphetamine. In March 2007, on the same day as the arrest, Talbot gave the fourth witness methamphetamine,

probable cause "without requiring proof of actual communication" when the officers involved have been working closely together—sometimes imputing those facts despite minimal or no communication among the officers. *See id.* at 1504 (citing *United States v. Nafzger,* 974 F.2d 906, 911 (7th Cir.1992); *United States v. Edwards,* 885 F.2d 377, 383 (7th Cir.1989); *Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir.1989); and *United States v. Kapperman,* 764 F.2d 786, 791 n. 5 (11th Cir.1985)). The *Shareef* court also noted that other courts have been more restrictive in imputing facts supporting probable cause, even among officers working closely together. *See id.* (citing *United States v. Del Porte,* 357 F.Supp. 969, 974 (S.D.N.Y.1973) (mem.), *aff'd, United States v. St. Jean,* 483 F.2d 1399 (2d Cir.1973); *State v. Cooley,* 457 A.2d 352, 355–56 (Del.1983); and *People v. Brnja,* 50 N.Y.2d 366, 429 N.Y.S.2d 173, 406 N.E.2d 1066, 1070 n. 4 (1980)). The *Shareef* court acknowledged "the value in imputing knowledge among officers working closely together," reasoning that "[a] presumption of communication often will reflect what has actually taken place ... [because] communication among officers during exigencies of a stop or arrest may often be subtle or nonverbal." *Id.* The court nonetheless concluded that "the presumption of communication is rebutted" where there is a specific finding that "the information had not been shared." *Id.* Because we conclude that the case before us involves vertical rather than horizontal collective knowledge, we cite to *United States v. Chavez,* 534 F.3d 1338 (10th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 953, 173 L.Ed.2d 148 (2009), to acknowledge the analytically useful distinction between these two categories of collective knowledge but defer further exploration of the boundaries of the horizontal collective knowledge doctrine to another day.

10. The vertical and horizontal distinctions describe the ways that knowledge is gathered and disseminated rather than the hierarchical relationship of the officers to each other. Thus, despite the "vertical" cognomen, an instruction to act need not be from a superior; a request or instruction originating from a fellow officer having knowledge amounting to probable cause can itself be sufficient.

which the witness immediately turned over to the Sheriff, along with the information that Talbot had three more "boulders" of methamphetamine on his person. Collectively, this evidence is sufficient to justify a belief in "a reasonable and prudent person in [the Sheriff's] position" that Talbot had committed an offense and amounts to probable cause to support an arrest. *See Trane*, 2002 UT 97, ¶ 27, 57 P.3d 1052.

¶ 17 Having probable cause that Talbot was involved in illegal activity, the Sheriff called on the Deputy to act on the Sheriff's behalf in a collective effort to detain and eventually arrest Talbot. Initially, the Sheriff instructed the Deputy to stop and detain Talbot. In giving this instruction, the Sheriff identified Talbot as the alleged perpetrator, told the Deputy "what was going on and what had happened," and explained that he was in the process of obtaining a search warrant. Then, moments after the Deputy had stopped Talbot, the Sheriff gave the Deputy the specific instruction to arrest Talbot. Only after receiving the Sheriff's specific instruction to arrest Talbot did the Deputy conduct the search that resulted in him finding the additional drug evidence in Talbot's vehicle and on his person.

¶ 18 The focus of Talbot's argument on appeal appears to be that the exact timing of the Sheriff's specific instruction to arrest and the Deputy's actual arrest—which Talbot asserts occurred before the Sheriff's specific instruction to arrest—makes his arrest unconstitutional. Utah courts have observed that "[a] search of an arrestee's person is valid ... [regardless of whether] it shortly precedes the arrest, 'so long as the arrest and the search are substantially contemporaneous and probable cause to effect the arrest exists independent of the evidence seized in the search.'" *State v. Chansamone*, 2003 UT App 107, ¶ 11, 69 P.3d 293 (quoting *State v. Banks*, 720 P.2d 1380, 1383–84 (Utah 1986)). Although this proposition has been articulated in cases where the probable cause was known to the arresting officer himself, we find this case to be sufficiently analogous. Here, moments after the Deputy had stopped Talbot, the Sheriff gave the Deputy the specific instruction to arrest Talbot. And only after receiving the Sheriff's specific instruction to arrest Talbot did the Deputy conduct the search that led to discovery of the additional drug evidence in Talbot's vehicle and on his person. Thus, the probable cause supporting Talbot's arrest "exist[ed] independent[ly] of the evidence seized in the search," and the Sheriff's specific instruction to arrest Talbot was "substantially contemporaneous" with Talbot's arrest. *See Chansamone*, 2003 UT App 107, ¶ 11, 69 P.3d 293 (internal quotation marks omitted). We therefore conclude that the exact timing of the arrest, under the facts of this case, is legally insignificant.

¶ 19 We further conclude that the probable cause known to the Sheriff can be vertically imputed to the Deputy through the collective knowledge doctrine. Although the Sheriff did not immediately communicate the specific instruction to arrest Talbot nor detailed facts supporting Talbot's arrest,[11] the communication and coordination between the Deputy and the Sheriff was sufficient to show that the Deputy was not acting on his own but was acting as part of a collective team effort led by the Sheriff. Because there was sufficient communication and coordination for the collective knowledge doctrine to apply, the probable cause known to the Sheriff is properly imputed to the Deputy. Thus, there was probable cause to justify Talbot's arrest by the Deputy. And because the arrest was within constitutional bounds, the ensuing search incident to the arrest was proper, even though it occurred before a search warrant was granted. The trial court therefore properly denied Talbot's motion to suppress.

II. Talbot Has Failed to Supplement the Record, Thereby Precluding Our Review of the Jury Voir Dire.

¶ 20 Talbot next argues that he is entitled to a new trial because the jury voir

---

11. It is unclear from the record what facts if any the Sheriff communicated to the Deputy. Rather, the Sheriff merely testified that he told the Deputy "what was going on and what had happened." But by operation of vertical collective knowledge, the Deputy was not required to know all the facts known to the Sheriff so long as the Sheriff himself was aware of the facts providing the basis for probable cause.

dire is missing from the trial transcript.[12] In support of this argument, Talbot asserts that the trial court has failed "to provide a transcript of the jury selection process, despite repeated requests" that the trial court supplement the record with the jury voir dire. Talbot's single request to supplement the record, however, was actually a "Motion Regarding Correction of Transcript Request and Inclusion of Trial Transcripts in the Record," filed on May 22, 2009. With this motion, Talbot sought to correct his original "transcript request, which [had been] intended" to request transcripts for both the trial and sentencing but "inadvertently only listed the sentencing [dates] and omitted the trial" dates. In a June 8, 2009 order, this court granted Talbot's motion and stayed the proceedings so that the trial transcripts could be included in the record. Upon receipt of the trial transcripts, briefing was rescheduled. Nowhere in Talbot's motion is the absence of the jury voir dire mentioned, nor did he make any further motion to supplement the record after the trial transcripts had been included in the record and made available to him.

¶ 21 Rule 11 of the Utah Rules of Appellate Procedure " 'establishes a procedure for supplementing the record [on appeal] when necessary.' " *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 33, 70 P.3d 904 (quoting *Olson v. Park–Craig–Olson, Inc.*, 815 P.2d 1356, 1359 (Utah Ct.App. 1991)). Specifically, " '[r]ule 11(h) is appropriate[ly used] only when the record must be augmented because of an omission or exclusion.' " *Id.* (quoting *Olson*, 815 P.2d at 1359). *See also* Utah R.App. P. 11(h) ("If anything material to either party is omitted from the record by error or accident . . . , the appellate court . . . may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted.").

¶ 22 Talbot has made no motion under rule 11(h) to supplement the record by including the currently excluded jury voir dire. Because Talbot has "fail[ed] to provide an

adequate record on appeal, [we] . . . must assume the regularity of the proceedings below." *See State v. Litherland*, 2000 UT 76, ¶ 11, 12 P.3d 92 (internal quotation marks omitted). We therefore do not consider this issue further.

### CONCLUSION

¶ 23 So long as Talbot's arrest was supported by probable cause, the fact that the Deputy may have exceeded the instructions given to him by the Sheriff has no bearing on whether Talbot's arrest was "lawful" under the constitution. The arrest was supported by probable cause based on all the facts and circumstances known to the Sheriff and his law enforcement team, of which the arresting Deputy was a part, and the knowledge of the Deputy's fellow officers was imputed to the Deputy under the collective knowledge doctrine at the time he arrested Talbot. We decline to consider Talbot's voir dire issue due to his failure to appropriately supplement the record under rule 11(h).

¶ 24 Accordingly, we affirm.

¶ 25 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and CAROLYN B. McHUGH, Associate Presiding Judge.

---

12. At the place in the trial transcript where the jury voir dire would usually be found, the transcript merely reads, "Whereupon, the jury selection process took place and a jury was selected to hear this case."